ROBERT GUE, APPELLANT, *v.* THE TIDE WATER CANAL COMPANY.

A corporate franchise to take tolls on a canal cannot be seized and sold under a *fieri facias,* unless authorized by a statute of the State which granted the act of incorporation.

Neither can the lands or works essential to the enjoyment of the franchise be separated from it and sold under a *fi. fa.,* so as to destroy or impair the value of the franchise.

THIS was an appeal from the Circuit Court of the United States, sitting in equity, for the district of Maryland.

The case is stated in the opinion of the court.

It was argued by *Mr. Campbell* and *Mr. McLaughlin* for the appellant, and *Mr. Dobbin* for the appellee.

The canal company had made a deed of trust, which was attacked as fraudulent, and defended by *Mr. Dobbin*, but the arguments upon that point will be passed over.

Upon the question of selling the franchise under a *fieri facias*, the counsel for the appellant said:

The question then is, whether land held in fee by a company for a canal and its appurtenances can be seized and sold, not by piecemeal, but so that the purchaser will take the land with the entire improvement as it stands.

In 4 Massachusetts, 596, Tippetts v. Walker, Parsons, Chief Justice, said it might require consideration whether this franchise could be taken in execution, but he does not decide it. That was a case of a turnpike road, and it is apprehended that no estate in the land passed to the Turnpike Company.

In 13 Sergeant and Rawle, 212, an execution was levied on ten miles of a turnpike, with a toll-house and appurtenances. It was there decided that the execution could not be sustained, and among the grounds relied on were the facts that the company had no estate in the land, and that it could not be cut up into parts. In both these particulars the case at bar is distinguishable.

In 5 Watts and Sergeant, 265, Leedon v. Plymouth Railroad Company, the plaintiff, who was an execution creditor, had not executed the land, but claimed that his judgment was a lien upon the tolls, and gave him a priority in payment out of the tolls collected by a sequestration. What might have been the decision if the land had been levied on does not appear, and the decision goes merely on the ground that the tolls were not bound by the judgment.

In 9 Watts and Sergeant, 27, Susquehanna Canal Co. v. Bonham, the execution was levied on a toll-house, and not on the whole work, and the court followed the decision in 13 Sergeant and Rawle, and an act of Assembly of Pennsylvania, of 1836, which had been passed subsequently to that decision.

In 9 Georgia, 394, Macon Railroad Co. v. Parker, it was made

the subject of a query, whether a railroad could be sold under an execution at law. In that case it had been sold under a decree in chancery.

In 10 Ohio, 476, Seymour *v.* Milford and Chilicothe Turnpike Co., the question was, whether the tolls of the road could be levied on under the Ohio act of 8th February, 1826, without notice first given to a receiver, and the decision was merely on the construction of a local statute.

In 5 Ben. Monroe, 1, it was decided that in Kentucky a turnpike road could not be sold under a decree in chancery, the only decree allowable in such a case at a creditor's suit being the application of the tolls.

In Coe *v.* Hart, before Mr. Justice McLEAN, (6 Am. Law Reg., 42,*) it was said, on the contrary, in regard to a railroad company, that while the proper mode of enforcing payment was by a proceeding in chancery to distribute the earnings equitably among the creditors, yet in a case where such a course would not satisfy their demands, the road might be sold, and the proceeds distributed; and the same doctrine was laid down by the superior court of Cincinnati, in the case of Ludlow and Heard, reported in the same volume of the Law Register, at page 503.

In State *v.* Rives, 5 Iredell's Law Rep., 297, it is said that the corporation having an estate in the lands, and not a mere easement, it seems to follow that such an estate is liable to execution.

In Arthur *v.* Comm. and Railroad Bank, 9 Smedes and Marshal, 394, 434, the court says, whether the road is the subject of assignment or execution depends on the nature of the estate which the corporation has in it.

The differing views in these cases make it difficult to say that there is any settled rule at common law, and throw us back on principle; and so considered, it seems hard to escape the conclusion that as, after all a corporation is merely placed on a level with individuals, it cannot hold its property exempt from the payment of its debts. But of course a purchaser

---

* This is the case in 23 Howard, 117.

would take, not the corporate franchise, but the estate of the corporation in the land, and would take that estate, of course, as the corporation held it. Holding it in this case on the condition of allowing the public to use the canal on payment of certain fixed tolls, the same user on the terms would continue to exist after the sale as before. (1825, c. 180, sec. 12.).

Perhaps, however, the true view in which to regard this case is to look at it as controlled by the law of Maryland, and the analogies of that law. The element which elsewhere seems to settle that a public improvement cannot be sold on execution, is its inalienability. If the Legislature will allow a voluntary assignment, the presumption of a prohibition against involuntarily alienation falls to the ground.

The act of Maryland of 1835, ch. 356, sec. 5, authorized the company to raise money by a loan, and the Court of Appeals of that State, in 3 Maryland, 311, Susquehanna Bridge and Banking Co. *v.* General Insurance Co., decided it to be the law of Maryland, that the power in a corporation to borrow, (and the corporation then before the court was a bridge as well as a banking corporation,) carried with it the power to mortgage. The deed in this case of December, 1841, was drawn upon the assumption that the power to mortgage existed, for it authorizes a mortgage. (Rec., 10.) But a power to mortgage necessarily involves a sale as a possible result; and if, therefore, in the present instance, the General Assembly of Maryland have authorized the company to part with its land and canal, it cannot be said that any public policy forbids a sale on execution.

See, also, 7 How., 278.

21 How., 138, 125.

*Mr. Dobbin* for the appellee:

3. The property levied upon is not properly the subject of a levy and sale under a *fieri facias.*

The levy was made on the locks of the canal, its toll-house or collector's office, and the land surrounding the outlet locks, all admitted to be essential for the uses and working of the canal. The agreement which states these facts is ambiguous

*Gue v. Tide Water Canal Co.*

in admitting the construction that the property levied on com-
prises the entire property of the Tide Water Canal Company,
and that a sale of that by the sheriff would transfer to the
purchaser a complete thing, which would enable him to dis-
charge the duty to the public of maintaining it as a highway.
This construction, it is obvious from the context, is not the
true one. In the paragraph preceding, it is said that the com-
pany "owns the line canal and its appurtenances, which ex-
tends from Havre de Grace, in Maryland, to the Pennsylvania
line," which is of course inconsistent with the construction
that the locks and toll-house, &c., which do not comprise the
thousandth part of the line, constitute the whole property.
Besides, the property levied upon is stated to be necessary to
the uses and working of the canal; it must therefore be some-
thing other than the canal itself, and is obviously intended to
apply to that part of the thing levied upon which is not visibly
a part of the canal, that is, land which the marshal, in his levy,
calls wharf property and building lots, &c., all of which are
admitted to be necessary for the uses and working of the Tide
Water canal.

The appellee contends that it possesses only an easement,
acquired for the purposes of its incorporation, connected with
the franchise of taking toll from the public for the use of
that easement, and that the said easement and franchise are
not subject to levy and sale under a *fieri facias.*

Ammant *v.* New Alexandria and Pittsburg Turnpike
Road Co., 13 Serg. and Rawle, 210.

Leedon *v.* Plymouth R. R. Co., 5 Watts and Serg., 265.

Susquehanna Canal Co. *v.* Bonham, 9 Watts and Serg.,
27.

Seymour *v.* Milford and Chilicothe R. R. Co., 10 Ohio,
476.

Winchester and Lexington Turn. Co. *v.* Vimont, 5 B.
Monroe, 1.

Coe *v.* Hart, 6 Am. Law Reg., 41—2.

Ludlow *v.* Heard, Ib., 502.

Tippetts *v.* Martin, 4 Mass., 596.

Macon R. R. Co. *v.* Parker, 9 Geo., 377.

That even if a portion of the property levied upon is liable to sale, the levy having blended it with that which is not liable, is void for the whole.

Ammant *v.* New Alexandria and Pittsburg Turnpike Road Co., 13 Serg. and Rawle, 210.

Mr. Chief Justice TANEY delivered the opinion of the court.

It appears from the record in this case that a judgment was obtained by Robert Gue, the appellant, against the Tide Water Canal Company, in the Circuit Court of the United States for the district of Maryland, upon which he issued a *fieri facias*, and the marshal seized and advertised for sale a house and lot, sundry canal locks, a wharf, and sundry other lots; all of which property, it is admitted, belonged to the Canal Company in fee.

The Canal Company thereupon filed their bill in the Circuit Court, praying an injunction to prohibit the sale of this property under the *fieri facias*. The injunction was granted, and afterwards, on final hearing, made perpetual. And from this decree the present appeal was taken.

The Tide Water canal is a public improvement situated in the State of Maryland, and constructed and owned by a joint stock company chartered by the State of Maryland for that purpose. The canal extends from Havre de Grace, in Maryland, to the Pennsylvania line; and it is admitted that the property levied on is necessary for the uses and working of the canal.

Upon the matters alleged in the bill and answer several questions of much interest and importance have been raised by the respective parties, and discussed in the argument here. But we do not think it necessary to decide them, nor to refer to them particularly, because, if it should be held that this property is liable to be sold by a judicial proceeding for the payment of this debt, yet it would be against equity and unjust to the other creditors of the corporation, and to the corporators who own the stock, to suffer the property levied on to be sold under this *fi. fa.*, and consequently the Circuit Court was right in granting the injunction.

The Tide Water canal is a great thoroughfare of trade, through which a large portion of the products of the vast region of country bordering on the Susquehanna river usually passes, in order to reach tide-water and a market. The whole value of it to the stockholders consists in a franchise of taking toll on boats passing through it, according to the rates granted and prescribed in the act of Assembly which created the corporation. The property seized by the marshal is of itself of scarcely any value, apart from the franchise of taking toll, with which it connected in the hands of the company, and if sold under this *fieri facias* without the franchise, would bring scarcely anything; but would yet, as it is essential to the working of the canal, render the property of the company in the franchise, now so valuable and productive, utterly valueless.

Now, it is very clear that the franchise or right to take toll on boats going through the canal would not pass to the purchaser under this execution. The franchise being an incorporeal hereditament, cannot, upon the settled principles of the common law, be seized under a *fieri facias*. If it can be done in any of the States, it must be under a statutory provision of the State; and there is no statute of Maryland changing the common law in this respect. Indeed, the marshal's return and the agreement of the parties shows it was not seized, and consequently, if the sale had taken place, the result would have been to destroy utterly the value of the property owned by the company, while the creditor himself would, most probably, realize scarcely anything from these useless canal locks, and lots adjoining them.

The record and proceedings before us show that there were other creditors of the corporation to a large amount, some of whom loaned money to carry on the enterprise. And it would be against the principles of equity to allow a single creditor to destroy a fund to which other creditors had a right to look for payment, and equally against the principles of equity to permit him to destroy the value of the property of the stockholders, by dissevering from the franchise property which was essential to its useful existence.

In this view of the subject, the court do not deem it proper to express any opinion as to the right of this creditor, in some other form of judicial proceeding, to compel the sale of the whole property of the corporation, including the franchise, for the payment of his debt. Nor do we mean to express any opinion as to the validity or operation of the deeds of trust and acts of Assembly of the State of Maryland, referred to in the proceedings. If the appellant has a right to enforce the sale of the whole property, including the franchise, his remedy is in a court of chancery, where the rights and priorities of all the creditors may be considered and protected, and the property of the corporation disposed of to the best advantage, for the benefit of all concerned. A court of common law, from the nature of its jurisdiction and modes of proceeding, is incapable of accomplishing this object; and the Circuit Court was right in granting the injunction, and its decree is therefore affirmed.