Rose Marie DORER and Forrms,
Inc., Plaintiffs,

v.

Brian AREL, Defendant.

No. Civ.A. 98–266–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 3, 1999.

Daniel Lewis Hawes, Hawes & Associates, Fairfax, VA, for plaintiffs.

## MEMORANDUM OPINION

ELLIS, District Judge.

The question presented in this trademark infringement action is whether a judgment creditor—here the plaintiff-trademark owner—can execute upon an infringing domain name registered to the judgment debtor in partial satisfaction of a default judgment. This appears to be a question of first impression raising several problematic issues, which, as it happens, need not be reached because the domain name registrar provides an alternative means by which plaintiff can use the judgment to acquire the infringing domain name.

### I.

On February 24, 1998, plaintiffs Rose Marie Dorer and ForRMS, Inc., filed a trademark infringement action against defendant Brian Arel, seeking money damages and injunctive relief. Defendant failed to file any responsive pleading and on April 24, 1998, plaintiffs moved for entry of default judgment. Based on the evidence received at the default hearing[1] and plaintiffs' pleadings, the magistrate judge found that defendant had infringed plaintiffs' mark by using the phrase "Write Word Publications" and the Internet domain name "WRITEWORD.COM" in the course of his business. As a result, the magistrate judge recommended (i) that plaintiffs be awarded money damages in the amount of $5,000,[2] and (ii) that the defendant be permanently enjoined from infringing plaintiffs' mark. The recommended injunctive relief included foreclosing defendant's continued use of the domain name "WRITEWORD.COM," but did not address disposition of the domain name registration itself. No objections to

1. Despite timely notice, the defaulting defendant did not appear at the hearing.

2. Plaintiffs did not establish actual economic damage or defendant's profits from the infringement, and elected to recover statutory damages pursuant to 15 U.S.C. § 1117(c).

Because plaintiffs had never communicated directly with defendant, and there was no evidence defendant willfully infringed plaintiffs' mark, the magistrate judge recommended that an award of no more than $5,000 was appropriate. See Magistrate Judge's Report and Recommendation at 3–4.

the magistrate's report were filed within the allotted ten day period,[3] and thereafter, the Court reviewed de novo the record as a whole, adopted the magistrate's report and recommendations, entered judgment for plaintiffs in the amount of $5,000, and issued a permanent injunction enjoining defendant from future use of the trademark.

The money judgment against defendant remains unsatisfied. According to plaintiffs, under Virginia law the infringing domain name, which is registered with Network Solutions, Inc. ("NSI"), is an asset subject to the lien of fieri facias. Va.Code § 8.01–501.[4] Although the matter is not contested by the absent defaulting defendant, plaintiffs' request for a writ of fieri facias raises a number of problematic issues.

## II.

When executing a judgment, a federal court must follow the law and procedure of the state in which it sits, in this case, Virginia law. *See* Rule 69(a), Fed. R.Civ.P. In Virginia, on motion of a judgment creditor, the clerk of the court issues a writ of *fieri facias*, which writ orders an appropriate officer to satisfy the judgment out of the judgment debtor's personal property. Va.Code §§ 8.01–466 et seq.; *id.* § 8.01–501 et seq. With respect to tangible personal property, such as auto-

mobiles and appliances, the officer would seize the property, dispose of it by judicial sale, and distribute the proceeds, less expenses, to the judgment creditor. *See* Va. Code § 8.01–478, *id.* § 8.01–487 et seq.[5] In addition, the lien extends to "all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return date of such writ become, possessed or entitled." *Id.* § 8.01–501. This statute thus reaches the debtor's "intangible" personal property, which includes a wide range of rights and debts held by the judgment debtor, including "bonds, notes, stocks, debts of all kind, including a debt payable in the future and ... all choses in action to which a debtor may be entitled." *In re Lamm,* 47 B.R. 364, 366 (E.D.Va.1984).[6] The officer executing the writ has authority to sell any property of the judgment debtor at judicial sale and to collect any debts owed the judgment debtor to which the lien applies. *See* Va.Code § 8.01–510. Yet significantly, there appears to be no statutory provision for direct transfer of the judgment debtor's property to the judgment creditor in satisfaction of the judgment. And where a third party controls the property subject to the writ, a judgment creditor typically must follow garnishment procedures under Virginia law. *See* Va.Code § 8.01–511 et seq.[7]

It is unclear, however, whether the writ of fieri facias is operative on domain names.[8] Plaintiffs assert that a domain

---

**3.** *See* 28 U.S.C. § 634(b)(1).

**4.** Plaintiffs also invoke the common law "writ of elegit" in aid of their request that the domain name be transferred directly to them from the judgment debtor. *See* Plaintiffs' Supplemental Memorandum at 3. Virginia, however, has specifically abolished this writ. *See* Va.Code § 8.01–467 ("No ... writ of elegit ... shall be issued hereafter.").

**5.** *Cf.* 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 743 ("[I]t is usually held that a court may not order a judgment debtor to directly transfer property to the judgment creditor....").

**6.** *See also Virginia Nat'l Bank v. Blofeld,* 234 Va. 395, 362 S.E.2d 692, 693–94 (1987) (debts owed to the judgment debtor); *First Union*

*Nat'l Bank of Va. v. Craun,* 853 F.Supp. 209, 211 (W.D.Va.1994) (partnership distribution); *In re Pennington,* 47 B.R. 322, 324 (Bankr. E.D.Va.1985) (accounts receivable); *Johnston Mem'l Hospital v. Hess,* 44 B.R. 598, 600 (W.D.Va.1984) (bank account).

**7.** Garnishment is a procedure by which the third party-garnishee becomes personally liable to the judgment creditor for the value of the debt or property that is owed the judgment debtor. *See United States v. Harkins Builders, Inc.,* 45 F.3d 830, 833 (4th Cir. 1995).

**8.** As a practical matter, it is difficult to see in the case of a domain name precisely what the executing official would seize—or what steps an executing official would take to compel the registering authority, in this case NSI, to can-

name is intangible personal property covered by § 8.01–501, and that it is simultaneously possessed by the registrar and registrant. The question whether a domain name registration is property subject to lien is a matter of first impression generally. Only one court has held, without extensive analysis, that a domain name registration is the personal property of the debtor, and therefore subject to lien (in that case, as in this, the registrar was NSI). *See Umbro Int'l, Inc. v. 3263851 Canada, Inc.,* 50 U.S.P.Q.2d 1786 (Va. Cir. Ct. Feb.3, 1999).[9] Yet, there are several reasons to doubt that domain names should be treated as personal property subject to judgment liens. To begin with, it seems appropriate to refer to trademark law for guidance where, as here, the domain name consists of a protected trademark or tradename. Indeed, it is trademark law that has been invoked to enjoin the use of trademarks as domain names by entities other than the mark's owner, and to combat the practice known as "cybersquatting," *i.e.,* registering and holding domain names based on trademarks and then offering those domain names for sale to the trademark owners.[10] Significantly, trademark law does not suggest that the trademark owner "owns" the words used in the mark, but only that the owner may enjoin others from using the words in commerce so as to avoid confusion or dilution of the value and significance of the mark.[11] And, although trademarks are generally

cel a domain name or to transfer one from one party to another. By contrast, in the case of intangible personal property such as stock, the executing official could seize the actual certificate if it were in the possession or control of the judgment debtor, or garnish the third-party account in which it is held, and then dispose of the property by judicial sale.

9. In *Umbro,* the opinion analogized domain names to patents. *See Umbro,* 50 U.S.P.Q.2d 1786. This analogy, while superficially appealing, is ultimately unsatisfactory. Two reasons suggest that the analogy is an inappropriate means of resolving this issue. First, there are important distinctions between patents and domain names in terms of their role as "property." A patent, unlike a domain name, confers on the patent owner the right to exclude others from making, using, or selling an invention. This is an intrinsic value, independent of the patent owner's goodwill. A domain name, unlike a patent, is essentially an address; it derives its value chiefly from its manner of use, typically as a tradename or trademark. In other words, a domain name, in most instances, is valueless apart from the content or goodwill to which it is attached. In this way, domain names are more similar to trademarks than patents. In addition, patents are freely assignable, without the involvement of the Patent and Trademark Office ("PTO"). *See* 3 Peter D. Rosenberg, *Patent Law Fundamentals* § 16.01[01][a] (1998). To transfer a domain name registered with NSI, however, the transferee establishes a different contractual relationship with NSI, pays registration fees as a new registrant, and NSI creates a new registration record. *See Fre-*

*quently Asked Questions: Registrant Name Change Agreement* (visited Aug. 31, 1999) <http://www.networksolutions.com/help/changes/mcafaq.html>.

Second, it is unclear if patents even are subject to a judgment lien under Virginia law. Federal law provides no bar to execution on a patent in satisfaction of a judgment, *see, e.g., McClaskey v. Harbison–Walker Refractories Co.* 138 F.2d 493, 495 (3d. Cir.1943), but whether the lien of fieri facias would reach a patent is a matter of state law. And the Virginia law governing execution upon intangible property sheds little light on this question. *Cf.* 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 159 ("Patent rights have traditionally been unavailable to a judgment creditor upon simple execution unless the judgment debtor volunteers their availability, ... and therefore, in the absence of an authorizing statute, is generally deemed not to be a proper subject of levy and sale under execution.").

10. *See, e.g., Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998); *Washington Speakers Bureau, Inc. v. Leading Auths., Inc.,* 33 F.Supp.2d 488 (E.D.Va.1999); *Green Prods. Co. v. Independence Corn By–Products Co.,* 992 F.Supp. 1070 (N.D.Iowa 1997).

11. *See* 15 U.S.C. §§ 1114, 1116; *see also Washington Speakers Bureau, Inc. v. Leading Auths., Inc.,* 49 F.Supp.2d 496, 498 (E.D.Va. 1999) (holding that a domain name which was the subject of a trademark suit should not be ordered transferred to the trademark owner, because "by prevailing ... [plaintiff] had won the right to enjoin infringement, but had

considered an aspect of intellectual property, they are not assets that can be freely traded apart from the goodwill to which they are attached.[12] Indeed, for this reason one treatise states that "a judgment creditor may not levy upon and sell a judgment debtor's registered service mark or trademark." 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 160 (1994).

Second, a domain name that is not a trademark arguably entails only contract, not property rights. Thus, a domain name registration is the product of a contract for services between the registrar and registrant. By this view, the contracted-for service produces benefit and value depending upon how the party receiving the service exploits it. Thus, a judgment debtor "owns" the domain name registration in the same way that a person "owns" a telephone number. A telephone number can be a valueless means of reaching a party, or it can be an extremely valuable commercial tool.[13] In most cases, a domain name registration is valueless apart from the way it is used by the entity with rights to it, and if the only value that comes from transfer of the domain name is from the value added by the user, it is inappropriate to consider that an element subject to execution. *Cf. Harkins Builders, Inc.*, 45 F.3d at 830 (noting that garnishment proceedings should not "insert[ ] the judgment creditor as another party to the contract … to earn money that the judgment debtor would otherwise have been entitled to earn").

Some domain names, however, are valuable assets *as domain names* irrespective of any goodwill which might be attached to them.[14] And, of course, domain names can be freely transferred apart from their content. Indeed, there is a lucrative market for certain generic or clever domain names that do not violate a trademark or other right or interest, but are otherwise extremely valuable to Internet entrepreneurs. *See* David Streitfeld, *On the Web, Simplest Names Can Become Priciest Addresses*, Washington Post, July 15, 1999, at A1. A domain name with significant value on the open market certainly would be an attractive, arguably appropriate target for a judgment creditor seeking to satisfy a judgment from a wayward debtor.

In any event, the knotty issue of whether a domain name is personal property subject to the lien of fieri facias ultimately need not be resolved because there is a more readily available, practical solution to the problem to be found in NSI's policies. In essence, NSI's published policies, apparently in anticipation of precisely this type of case, provide at least two means by which plaintiffs can challenge the defendant's domain name registration.[15] First, NSI has a policy regarding domain names that are the subject of a lawsuit. If a domain name is involved in litigation, and the complainant brings this to NSI's attention prior to or in the course of litigation, NSI will "deposit control of the domain name in the registry of the court," and abide by any court order regarding its disposition.[16] *Dispute Policy* ¶ 10(b).

acquired *no right of ownership* over the four domain names").

**12.** Plaintiffs so argue in their supplemental memorandum, claiming that the domain name would have no value on the open market, as its use in commerce would be a violation of their trademark. *See* Plaintiffs' Supplemental Memorandum at 1.

**13.** For example, "1–800–COLLECT" or "1–800–FLOWERS."

**14.** Plaintiffs, however, do not claim that the domain name at issue in this case has any value on the open market, as would a domain

name such as "computer.com." See Plaintiffs' Supplemental Memorandum at 1.

**15.** *See Network Solutions Domain Name Dispute Policy* (Effective February 25, 1998) <http://www.networ ksolutions.com/legal/disputepolicy.html> [hereinafter "Dispute Policy"]; *Frequently Asked Questions: Network Solutions' Domain Name Dispute Policy* (visited Aug. 30, 1999) <h ttp://www.networksolutions.com/help/general/dispute.html> [hereinafter "Dispute Policy FAQ"].

**16.** NSI will so cooperate, according to its policy, as long as it is *not* named as a party to the case. *Id.* ¶ 10(c).

Presumably, this would permit a court to transfer or dispose of the domain name in a manner consistent with the final relief ordered in the case. This procedure is inapplicable here unless plaintiffs were to seek deposit of the name now, and then seek an amendment to the judgment, as the final judgment in this case does not order any disposition of the domain name registration.

■ A second policy seems more appropriate here. NSI has established a procedure that appears to be an alternative to litigation. *See id.* ¶¶ 8–9. A complainant must demonstrate to NSI both that the registrant's domain name infringed the complainant's mark, and that the complainant has provided sufficient notice to the registrant of that fact. *Id.* ¶ 8. If NSI receives "sufficient evidence" of this, it will place the registrant's domain name in a "hold" status, pending resolution of the dispute. *Id.* The dispute can be resolved by agreement of the parties, court order, or cancellation, either at the domain name registrant's request or because of nonpayment. *Id.* ¶ 9; *Dispute Policy FAQ* ¶ 20. In addition, NSI maintains "in its sole discretion" the right "to revoke, suspend, transfer or otherwise modify a domain name registration." *Dispute Policy* ¶ 7. Further, so that plaintiffs might acquire the domain name for their own use, NSI's web page indicates that a complainant would be given a chance to register for the canceled domain name. *Domain Name Dispute Policy FAQ* ¶ 22. This method seems to fit the facts at bar. A final judgment in plaintiffs' favor should be "sufficient evidence" of plaintiffs' rights under the trademark laws, and the service of process requirements of the Federal Rules of Civil Procedure should satisfy the notice requirement.

To the extent that the plaintiffs simply seek transfer or cancellation of the domain name, there appears to be an avenue of self-help that is at least as efficacious and surely less problematical than seeking to compel the defendant to transfer personal property in satisfaction of the judgment.

A ruling on plaintiffs' motion to compel transfer of personal property will be deferred pending plaintiffs' recourse to the self-help method suggested in this opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record. An appropriate order will enter.