Present:  Carrico, C.J., Lacy, Hassell, Keenan, Koontz,
and Kinser, JJ., and Compton, Senior Justice

NETWORK SOLUTIONS, INC.

v. Record No. 991168  OPINION BY JUSTICE CYNTHIA D. KINSER
                                          April 21, 2000
UMBRO INTERNATIONAL, INC., ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge


I.  INTRODUCTION

In this case of first impression, we address the issue whether a contractual right to use an Internet domain name can be garnished.  In doing so, we "apply traditional legal principles to [a] new avenue[] of commerce," Intermatic Inc. v. Toeppen, 947 F. Supp. 1227, 1229 (N.D. Ill. 1996), and conclude that such a contractual right is "the product of a contract for services," Dorer v. Arel, 60 F. Supp.2d 558, 561 (E.D. Va. 1999), and hence is not subject to garnishment. Accordingly, we will reverse the judgment of the circuit court holding that the domain name registrations at issue in this appeal are garnishable.

II.  FACTS AND PROCEEDINGS

In 1997, appellee Umbro International, Inc. (Umbro), obtained a default judgment and permanent injunction in the United States District Court for the District of South Carolina against 3263851 Canada, Inc., a Canadian corporation

(the judgment debtor), and also against a Canadian citizen who owns the judgment debtor. Umbro Int'l, Inc. v. 3263851 Canada, Inc., No. 6:97-2779-20, slip op. at 5, 8 (D.S.C. Dec. 31, 1997). That proceeding involved the judgment debtor's registration of the Internet domain name[1] "umbro.com." In its order, the district court permanently enjoined the judgment debtor from further use of the domain name "umbro.com" and awarded judgment to Umbro in the amount of $23,489.98 for attorneys' fees and expenses. Id. at 8.

Umbro subsequently obtained a Certification of Judgment for Registration in Another District from the district court in South Carolina. Umbro then filed that document in the United States District Court for the Eastern District of Virginia, which, in turn, issued an Exemplification Certificate. See 28 U.S.C. § 1963. Using that Certificate and a copy of the district court's judgment, Umbro obtained a writ of fieri facias from the Circuit Court of Fairfax County and instituted a garnishment proceeding that is the subject of this appeal.

In the garnishment summons, Umbro named Network Solutions, Inc. (NSI), as the garnishee and sought to garnish 38 Internet domain names that the judgment debtor had

---

[1] An explanation and discussion of an "Internet domain name," as well as related terms, appears infra at pages __-__.

registered with NSI.  Accordingly, Umbro asked NSI to place those domain names on hold and to deposit control of them into the registry of the circuit court so that the domain names could be advertised and sold to the highest bidder.

NSI answered the garnishment summons, stating that it held no money or other garnishable property belonging to the judgment debtor.  Instead, NSI characterized what Umbro sought to garnish as "standardized, executory service contracts" or "domain name registration agreements."  NSI also asserted that 8 of the 38 domain names listed in the garnishment summons either were not then, or never had been, subject to a domain name registration agreement between NSI and the judgment debtor.[2]

Umbro subsequently filed a motion for NSI to show cause why it had not deposited control of the judgment debtor's domain names into the registry of the circuit court.  NSI opposed that motion and the garnishment on the grounds that the writ of fieri facias does not attach to the judgment debtor's contractual rights that are dependent on unperformed conditions, that the judgment debtor's domain name registration agreements with NSI are contracts for services and thus not subject to garnishment, that domain name services do not have a readily ascertainable value, and that

3

the domain name services are not similar to patents and other forms of intellectual property.

In opposing the garnishment, NSI submitted an affidavit from its director of business affairs, who stated that domain names cannot function on the Internet in the absence of certain services being provided by a domain name registrar such as NSI.  He further stated that NSI performs these domain name registration services pursuant to a standard domain name registration agreement.

After a hearing on Umbro's show cause motion, the circuit court determined that the judgment debtor's Internet domain name registrations are "valuable intangible property subject to garnishment."  In a letter opinion, the court concluded that the judgment debtor has a possessory interest in the domain names registered with NSI.  The court further found that there are no unperformed conditions with regard to the judgment debtor's contractual rights to use the domain names, that NSI is not being forced to perform services for entities with whom it does not desire to do business, and that the domain names are a "new form of intellectual property."

---

[2] Umbro now seeks to garnish 29 domain name registrations by the judgment debtor with NSI.

4

Accordingly, the court ordered NSI to deposit control "over all of the [j]udgment [d]ebtor's Internet domain name registrations into the [r]egistry" of the court for sale by the sheriff's office. Because of the intangible nature of the domain names, the court directed the sheriff's office to sell the domain names in whatever manner it "deem[ed] appropriate" after consultation with Umbro, and to notify NSI as to the name of the successful bidder for each domain name. According to the court's order, NSI then had to "transfer the domain name registration" to the successful bidder "as soon as commercially practicable following NSI's receipt of a properly completed registration application for the domain name from the winning bidder." This appeal followed.

Before analyzing NSI's assignments of error, we will discuss the Internet, the nature of domain names, and our statutory garnishment proceedings.

### III. THE INTERNET AND DOMAIN NAMES

The Internet, which began as a United States military computer network called ARPANET, is now a "vast and expanding," Intermatic, 947 F. Supp. at 1230, worldwide network of interconnected computers, Reno v. American Civil Liberties Union, 521 U.S. 844, 849-50 (1997). Anyone connected to the Internet can access an exponentially expanding wealth of information through an array of

5

communication methods such as electronic mail, electronic mailing list services known as listservs, chat rooms, newsgroups, and the World Wide Web (the Web).  Id. at 851. The Web is probably the most widely known and utilized method of communication on the Internet.  Id. at 852.  In simple terms, the Web consists of information or documents presented on "pages"[3] of graphics, text and/or sound.  Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 951 (C.D. Cal. 1997), aff'd, 194 F.3d 980 (9th Cir. 1999); Intermatic, 947 F. Supp. at 1231.  Pages may "contain 'links'[4] to other pages either within the same set of data files ('Web site') or within data files located on other computer networks." Lockheed Martin, 985 F. Supp. at 951.  See also Robert L. Tucker, Information Superhighway Robbery: The Tortious Misuse of Links, Frames, Metatags, and Domain Names, 4 Va. J.L. & Tech. 8, ¶ 6 (Fall 1999) <http://vjolt.student.virginia.edu/graphics/vol4/v4i2a8-tucker.html>.

Each method of communicating on the Internet depends on the use of a unique domain name, also known as a "fully

---

[3] "Pages" are computer data files.  Intermatic, 947 F. Supp. at 1231.

[4] A "link" is a graphic, text or combination of the two that an Internet user may select, generally with a computer's mouse, and that provides an "avenue to other documents" on

qualified domain name," Intermatic, 947 F. Supp. at 1230, to locate a specific computer or network, Lockheed Martin, 985 F. Supp. at 951. Domain names have been compared to trademarks, addresses, or telephone numbers, but domain names, addresses, and telephone numbers, unlike some trademarks, are unique. MTV Networks, A Division of Viacom Int'l, Inc. v. Curry, 867 F. Supp. 202, 204 n.2 (S.D.N.Y. 1994); Adam Chase, A Primer on Recent Domain Name Disputes, 3 Va. J.L. & Tech. 3, ¶ 2 (Spring 1998) <http://vjolt.student.virginia.edu/graphics/vol3/vol3_art3.ht ml>.

Each "host" computer that is "more-or-less permanently" connected to the Internet is assigned its own "Internet Protocol" (IP) number or address, which specifies the location of the computer. Tucker, supra, ¶ 12. See also Intermatic, 947 F. Supp. at 1230. The IP number is comprised of four groups of numbers, with each group separated by a decimal point called a "dot." Tucker, supra, ¶¶ 12-13. See also Lockheed Martin, 985 F. Supp. at 952; Panavision Int'l, L.P. v. Toeppen, 945 F. Supp. 1296, 1299 (C.D. Cal. 1996), aff'd, 141 F.3d 1316 (9th Cir. 1998). For example, the IP number for this Court is 208.210.219.101.

_____

the Internet. Reno, 521 U.S. at 852. See also Intermatic, 947 F. Supp. at 1232.

7

Because Internet users can more readily remember a name as opposed to a lengthy sequence of numbers composing an IP number, each individual computer or network also has an alphanumeric name called a "domain name." <u>Lockheed Martin</u>, 985 F. Supp. at 952; <u>Panavision</u>, 945 F. Supp. at 1299; Chase, <u>supra</u>, ¶ 2; Tucker, <u>supra</u>, ¶ 12. Reading from right to left, each portion of a domain name identifies a more specific area on the Internet, and as with IP numbers, is separated by a "dot." For example, in this Court's domain name, courts.state.va.us, "us" is the top-level domain,[5] and is a country code or identifier which signifies that the domain name is registered in the United States. <u>See</u> Sally M. Abel, <u>Trademark Issues in Cyberspace: The Brave New Frontier</u>, 5 Mich. Telecomm. & Tech. L. Rev. 91, 93 n.4 (1999); Kenneth Sutherlin Dueker, <u>Trademark Law Lost in Cyberspace: Trademark Protection for Internet Addresses</u>, 9 Harv. J.L. & Tech. 483, 492 n.50, 494-95 n.59 (1996); Stuart D. Levi, <u>The Domain Name System & Trademarks</u>, 563 PLI/Pat 449, 453 (1999). "[V]a," the

---

[5] Top-level domains indicate a broad class to which the domain name belongs. For example, "edu" represents educational institutions, "gov" is reserved for federal government entities, and "net" is reserved to networks. The top-level domain "com," short for "commercial," is a catch-all domain, and is generally available to registrants who have no special attributes which would qualify them to use another top-level domain. Tucker, <u>supra</u>, ¶ 13. Top-level domains are assigned by a domain name registrar, such as NSI. Sally M. Abel, <u>Trademark Issues in Cyberspace: The Brave New Frontier</u>, 5 Mich. Telecomm. & Tech. L. Rev. 91, 93 (1999).

8

second-level domain,[6] indicates a sub-network used in the Commonwealth of Virginia; "state," the third-level domain, describes a sub-network used by the state government of Virginia; and "courts" further indicates a computer used by Virginia's judiciary. See Lockheed Martin, 985 F. Supp. at 952; Dueker, supra, at 492-93.

If an Internet user knows the domain name for a particular Web site, such as this Court, the user can type the name into a Web browser,[7] and access that site directly without having to conduct what may be a time-consuming search. Panavision, 945 F. Supp. at 1299. See also MTV, 867 F. Supp. at 204 n.2 (noting absence of "satisfactory Internet equivalent of telephone company white pages or directory assistance"). Even when a user does not know the specific domain name for a Web site, the user can often deduce the name and still find the site without performing a search. Most businesses on the Internet use the "com" top-level domain. See Lockheed Martin, 985 F. Supp. at 952. Thus, a

---

[6] All second-level domains are unique, and frequently contain the corporate or trade name of the domain name holder. Lockheed Martin, 985 F. Supp. at 952. Second-level domains are selected and requested by the domain name registrant. Abel, supra, at 93.

[7] A Web browser is a computer program that allows a user of an Internet-connected computer to access content on the Web. See Reno, 521 U.S. at 852; Jason R. Berne, Court Intervention but not in a Classic Form: A Survey of Remedies

user could intuitively find a company's Web site by typing into a Web browser the corporate or trade name, such as "umbro.com."[8]  Because the second-level domain name, i.e., "umbro" in the example, must be exclusive, a company would obviously want to use its recognized name in the second level of its Internet domain name.  See id.  See also Panavision, 945 F. Supp. at 1299 ("businesses frequently register their names and trademarks as domain names"); supra note 6.  The advantage of having such a domain name thus explains the value that is attached to some domain names and the reason why litigation has occurred between trademark owners and domain name holders.[9]  Id.  See also Intermatic, 947 F. Supp. at 1233.

NSI's role in the Internet domain name system is to manage certain domain name registrations.  Lockheed Martin, 985 F. Supp. at 953.  At one time, NSI held the exclusive

_____

in Internet Trademark Cases, 43 St. Louis U. L.J. 1157, 1167 & n.71 (1999).

[8] When an Internet user enters a domain name in his or her browser, the browser sends the request through the Internet in a process administered by a computer termed a "top-level server."  Top-level servers maintain a registry of each domain name active in a given top-level domain and match requests for domain names to IP numbers in their registries. Intermatic, 947 F. Supp. at 1231; Berne, supra, at 1167.

[9] Much of the litigation regarding domain names has focused on trademark infringements.  We cite to several of those cases and related law review articles in this opinion, but none of those cases squarely addresses the question before us.

right, pursuant to a contract with the National Science Foundation, to assign Internet domain names using the top-level domains "gov," "com," "org," "net," and "edu," see id., but it now shares that right with other domain name registrars, Jason R. Berne, Court Intervention but not in a Classic Form: A Survey of Remedies in Internet Trademark Cases, 43 St. Louis U. L.J. 1157, 1168 (1999); Levi, supra, at 456; Register.com - Domain Name Registration Services (visited Apr. 12, 2000) <http://www.register.com>. NSI charges an initial registration fee of $70 for each new domain name. The registration is valid for two years and may be renewed on a yearly basis for a fee of $35 per year.[10]

In assigning the second-level domain names, NSI performs basically two services. NSI first compares applications with a database of existing domain names to prevent the registration of identical second-level domain names. NSI then matches the domain name to the corresponding IP number for the desired Web site. Lockheed Martin, 985 F. Supp. at 953. Domain names are available essentially on a first-come, first-serve basis. MTV, 867 F. Supp. at 204 n.2; Chase, supra, ¶ 5.

_____

[10] NSI has recently begun to register domain names for up to ten years. NSI – Catalog -- Web Address Registration

NSI performs these services pursuant to domain name registration agreements. NSI does not independently verify a registrant's right to use a domain name, but does require a registrant to make certain representations and warranties, such as certifying that the registrant has the right to use the domain name and that such use does not interfere with the rights of another party. Panavision, 945 F. Supp. at 1299.

A registrant also agrees to be bound by NSI's "Domain Name Dispute Policy." In accordance with that policy, when litigation arises with regard to the registration and use of a domain name, NSI deposits control over the domain name into the registry of a court by furnishing the plaintiff in such litigation with a "registry certificate."[11] In such instances, NSI agrees to be bound by the provisions of any temporary or final court orders regarding the disposition of a domain name without being named a party to the litigation, provided the domain name registrant is named as a party. The terms of the "Domain Name Dispute Policy" also authorize NSI, in its sole discretion, "to revoke, suspend, transfer or otherwise modify a domain name registration upon thirty (30)

_____
(visited Apr. 12, 2000)
<http://www.networksolutions.com/catalog/domainname/>.
    [11] The record in this case does not contain any "registry certificate" that was filed in the litigation in the federal district court in South Carolina, but it does contain a "Declaration" by NSI's "Internet Business Manager," which was

calendar days prior written notice, or at such time as [NSI] receives a properly authenticated order from a court . . . requiring the revocation, suspension, transfer or modification of the domain name registration."

NSI has also developed a procedure that allows a new domain name registrant to acquire a previously registered domain name with the consent of the former registrant of that name.  The old registrant relinquishes its domain name registration, and the new registrant agrees to be bound by the terms of NSI's current "Domain Name Registration Agreement" and "Domain Name Dispute Policy."  NSI requires the old and new registrants to execute a form agreement titled "Registrant Name Change Agreement[,] Version 3.0 — Transfers" in order to effect this change.

IV.  GARNISHMENT PROCEDURES

Under Virginia law, a judgment creditor can enforce a judgment for money by requesting the clerk of the court where the judgment was rendered to issue a writ of fieri facias and then by delivering that writ to a "proper person" of the court for execution.  Code § 8.01-466.  See also Code § 8.01-465.2 (foreign judgment properly filed with clerk is subject to same procedures as judgments rendered by circuit court).  The writ commands the officer "to make the money therein

_____
filed in that litigation.  The "Declaration" contains

13

mentioned out of the goods and chattels of the person against whom the judgment is." Code § 8.01-474. <u>See</u> <u>also</u> Code § 8.01-478 ("writ of fieri facias may be levied on the goods and chattels of the judgment debtor"). When property of a judgment debtor is not capable of being levied on, as in the case of intangible personal property, such property is nevertheless subject to the execution lien upon delivery of the writ to a sheriff or other officer. Code § 8.01-501; <u>Virginia Nat'l Bank v. Blofeld</u>, 234 Va. 395, 399, 362 S.E.2d 692, 694 (1987).

Garnishment, like other lien enforcement remedies authorizing seizure of property, is a creature of statute unknown to the common law, and hence the provisions of the statute must be strictly satisfied. <u>See</u> <u>Long v. Ryan</u>, 71 Va. (30 Gratt.) 718, 724 (1878); <u>Mantz v. Hendley</u>, 12 Va. (2 Hen. & M.) 308, 315 (1808). As pertinent here, a judgment creditor can institute garnishment proceedings if "there is a liability" on a third person to the judgment debtor. Code § 8.01-511. <u>Accord</u> <u>Blofeld</u>, 234 Va. at 399, 362 S.E.2d at 694. "Liability" in this context means a "legal obligat[ion]", "enforceable by civil remedy," "a financial or pecuniary obligation," or a "debt." Black's Law Dictionary 925 (7th ed. 1999). <u>Accord</u> Webster's Third New International

_____
essentially all the elements of a "registry certificate."

14

Dictionary 1302 (1993)(an "amount that is owed . . . [;] pecuniary obligations . . .[;] debts").

"[A] proceeding in garnishment is substantially an action at law by the judgment debtor in the name of the judgment creditor against the garnishee, and therefore the judgment creditor stands upon no higher ground than the judgment debtor and can acquire no greater right than such debtor . . . possesses." Lynch v. Johnson, 196 Va. 516, 521, 84 S.E.2d 419, 422 (1954). A garnishment summons does not create a lien itself, but, instead, is "a means of enforcing the lien of an execution placed in the hands of an officer to be levied." Knight v. The Peoples Nat'l Bank of Lynchburg, 182 Va. 380, 392, 29 S.E.2d 364, 370 (1944).

V.  ANALYSIS

In its first assignment of error, NSI asserts that the circuit court erroneously concluded "that Internet domain names are a new form of intellectual property, separate and apart from the domain name services provided by NSI, in which the judgment debtor has a possessory interest." NSI argues that the registration services agreement is the only source of rights acquired by a registrant and that a "registrant receives only the conditional contractual right to the exclusive association of the registered domain name with a given IP number for a given period of time." In NSI's words,

15

a domain name is "simply a reference point in a computer database . . . [or a] vernacular shorthand for the registration services that enable the Internet addressing system to recognize a particular domain name as a valid address."  Thus, NSI contends that such services are not subject to the execution lien of a writ of fieri facias.

In response, Umbro contends that, when NSI processes a registrant's application and assigns a specific domain name to the registrant under NSI's first-come, first-serve policy, that registrant acquires the right to use the domain name for an initial period of two years, to exclude others from using the name, and to effect a transfer of the name by using NSI's "Registrant Name Change Agreement."  Thus, Umbro posits that NSI not only agrees to associate a particular domain name with an IP number, thus making the domain name an operational Internet address, but also grants to the registrant the exclusive right to use a unique domain name for a specified period of time.  That contractual right, according to Umbro, is the intangible property in which the judgment debtor has a possessory interest and that is subject to garnishment.

Initially, we must point out that NSI acknowledged during oral argument before this Court that the right to use

a domain name is a form of intangible personal property.[12]
That position is consistent with the one NSI took in <u>Network
Solutions, Inc. v. Clue Computing, Inc.</u>, 946 F. Supp. 858 (D.
Colo. 1996).  There, in order to "assign registration and
use" of a domain name "as determined by the [c]ourt," NSI
initiated a statutory interpleader action pursuant to 28
U.S.C. § 1335.  <u>Id.</u> at 860.  That statute requires that a
plaintiff have possession or custody of money or <u>property</u> in
which adverse parties claim conflicting interests.  <u>Id.</u>
However, NSI's acknowledgement is not dispositive of this
appeal.  Likewise, we do not believe that it is essential to
the outcome of this case to decide whether the circuit court

_____

[12] Congress recently passed the "Anticybersquatting
Consumer Protection Act."  This amendment to Section 43 of
the Trademark Act of 1946, 15 U.S.C. § 1125, <u>et.</u> <u>seq.</u>,
authorizes an in rem civil action against a domain name in
the judicial district in which the domain name registrar is
located.  The amendment also states that the remedies in such
an action are limited to an order "for the forfeiture or
cancellation of the domain name or the transfer of the domain
name to the owner of the mark."  <u>Id.</u> at § 1125(d)(2)(A) and
(D)(i).  Finally, the amendment requires the registrar of the
domain name to deposit with the court "documents sufficient
to establish the court's control and authority regarding the
disposition of the registration and use of the domain name."
<u>Id.</u> at § 1125(d)(2)(D)(i)(I).  While it could be argued that
this legislation supports the position that Internet domain
names are intangible property since the amendment provides
for an in rem proceeding, the language of the amendment does
not address the relationship between an operational Internet
domain name and its attendant services provided by a
registrar such as NSI.

correctly characterized a domain name as a "form of intellectual property."[13]

Irrespective of how a domain name is classified, we agree with Umbro that a domain name registrant acquires the contractual right to use a unique domain name for a specified period of time.  However, that contractual right is inextricably bound to the domain name services that NSI provides.  In other words, whatever contractual rights the judgment debtor has in the domain names at issue in this appeal, those rights do not exist separate and apart from NSI's services that make the domain names operational Internet addresses.  Therefore, we conclude that "a domain name registration is the product of a contract for services between the registrar and registrant."  <u>Dorer</u>, 60 F. Supp.2d at 561.  A contract for services is not "a liability" as that term is used in § 8.01-511 and hence is not subject to garnishment.  <u>See</u> <u>Sykes v. Beal</u>, 392 F. Supp. 1089, 1094-95

---

[13] Historically, certain types of intangible, intellectual property have not been subject to levy and sale under execution.  <u>See</u> <u>Ager v. Murray</u>, 105 U.S. 126, 131 (1881) ("debtor's interest in the patent-rights . . . cannot be taken on execution at law"); <u>Stephens v. Cady</u>, 55 U.S. 528, 531 (1852) (copyright "is not the subject of seizure or sale by means of" an execution, but it "may be reached by a creditor's bill"); <u>Stutzman v. C.A. Nash & Son, Inc.</u>, 189 Va. 438, 446, 53 S.E.2d 45, 49 (1949) ("there is no property in a trade-mark" aside from its use in a trade or business).  <u>But see</u> <u>McClaskey v. Harbison-Walker Refractories Co.</u>, 138 F.2d 493, 500 (3rd Cir. 1943) (allowing judgment creditor to reach judgment debtor's patent by using writ of fieri facias).

(D. Conn. 1975) (analyzing garnishment of services and concluding that automobile insurer's duty to defend is not garnishable); cf. J. Maury Dove Co., Inc. v. New River Coal Co., 150 Va. 796, 827, 143 S.E. 317, 327 (1928) (where "contract contains mutual obligations and liabilities, or involve[s] a relation of personal confidence," one party cannot assign it without consent of other party); McGuire v. Brown, Guardian, 114 Va. 235, 242, 76 S.E. 295, 297 (1912) (holding contract for personal services is not assignable).

If we allow the garnishment of NSI's services in this case because those services create a contractual right to use a domain name, we believe that practically any service would be garnishable. For example, if a satellite television customer prepaid the fee for a particular channel subscription, Umbro's position would allow garnishment of the subscription service. We also are concerned that a decision to uphold the garnishment at issue would be opening the door to garnishment of corporate names by serving a garnishment summons on the State Corporation Commission since the Commission registers corporate names and, in doing so, does not allow the use of indistinguishable corporate names. See Code §§ 13.1-630 and -631. Cf. Gue v. The Tide Water Canal Co., 65 U.S. 257, 263 (1860) (a "franchise being an incorporeal hereditament, cannot . . . be seized under a

fieri facias"). Without statutory changes, we are not willing to allow such results in Virginia simply because in today's case we are dealing with "a unique and wholly new medium of worldwide human communication" known as the Internet. Reno, 521 U.S. at 850 (quoting American Civil Liberties Union v. Reno, 929 F. Supp. 824, 844 (E.D. Pa. 1996)).

Nevertheless, Umbro attempts to draw a distinction between the judgment debtor's contractual right to use the domain names, which came into existence after NSI screened its database to guard against registering identical names and matched the judgment debtor's domain names to the corresponding IP numbers, and NSI's services that continue to make those domain names operational Internet addresses. We are not persuaded by Umbro's argument, although at least two jurisdictions have made a similar distinction with regard to telephone numbers.

The court in Georgia Power Co. v. Security Inv. Properties, Inc., 559 F.2d 1321 (5th Cir. 1977), found such a distinction. In discussing the principle that a bankruptcy court cannot exercise summary jurisdiction over property unless the debtor or trustee has actual or constructive possession of the property in question, the court observed that "for a business, . . . telephone numbers constitute a

20

unique property interest, the value of which increases as the number becomes widely known through publication in guidebooks, posting on billboards, and imprinting on publicity items." Id. at 1324. The court then distinguished the property interest in such numbers "from a subscriber's rights to the telephone utility's service." Id. See also Darman v. Metropolitan Alarm Corp., 528 F.2d 908, 910 n.1 (1st Cir. 1976) (approving sale of telephone numbers in order to increase value of bankruptcy estate and noting distinction between "a subscriber's rights derived from a contract for telephone service and a subscriber's possible claim to a possessory interest in the telephone number"). However, other courts have reached different results. See Slenderella Sys. of Berkeley, Inc. v. Pacific Tel. & Telegraph Co., 286 F.2d 488, 490 (2nd Cir. 1961) (finding that telephone numbers were neither property of, nor in possession of, bankrupt subscribers); Rothman v. Pacific Tel. & Telegraph Co., 453 F.2d 848, 849-50 (9th Cir. 1971)(following decision in Slenderella), cert. denied, 406 U.S. 919 (1972).

We are cognizant of the similarities between a telephone number and an Internet domain name and consider both to be products of contracts for services. See Dorer, 60 F. Supp.2d at 561. In our opinion, neither one exists separate from its

21

respective service that created it and that maintains its continued viability.

Our view is not changed by the fact that NSI has developed a policy whereby control of Internet domain names is deposited with a court when the domain names are the subject of litigation and, as a part of that policy, agrees to abide by the terms of any court order regarding the domain names. That NSI routinely follows that procedure, in which the end result requires practically the same actions by NSI as those which would be required of it under the terms of the circuit court's order in this case, does not mean that NSI's Internet domain name services should be subject to garnishment.

By our decision today, we do not suggest that contractual rights can never be garnished. We recognized otherwise in Lynch. There, a judgment creditor attempted to garnish a sum due and payable under the terms of a fire insurance policy. The judgment creditor claimed that only the judgment debtor was to be indemnified by the insurance policy, that there was a present liability on the part of the insurance company to pay the judgment debtor for the insured loss, and that the funds held by the insurance company were garnishable. Lynch, 196 Va. at 521, 84 S.E.2d at 422. This Court determined that the judgment creditor's position would

be correct if the judgment debtor had the right to demand payment from the insurance company for his sole benefit. Id. However, the Court concluded that because of an agreement between certain parties, which was made contemporaneously with a deed of conveyance, the insurance proceeds stood "in the place of the destroyed property," and that none of the several persons whose interests in the property were insured, including the judgment debtor, was individually entitled to any of the insurance proceeds. Id. at 525, 84 S.E.2d at 424.

Similarly, while applying Virginia law, the United States Court of Appeals for the Fourth Circuit allowed a judgment creditor to garnish money that a builder owed to a judgment debtor under the builder's contract with the judgment debtor. United States v. Harkins Builders, Inc., 45 F.3d 830, 835 (4th Cir. 1995). In its discussion of garnishment proceedings under Virginia law, the court stated, and we agree, that "where the property is in the form of a contract right, the judgment creditor does not 'step into the shoes' of the judgment debtor and become a party to the contract, but merely has the right to hold the garnishee liable for the value of that contract right." Id. at 833. Notably, in Lynch and Harkins, the property that each judgment creditor sought to garnish was a sum of money due

under a contract, not the performance of services by a garnishee.

## VI.  CONCLUSION

Under Code § 8.01-511, a garnishment summons may be issued with respect to "a liability on any person other than the judgment debtor."  In a garnishment proceeding, "[o]rdinarily, the only adjudicable issue is whether the garnishee is liable to the judgment[]debtor, and if so, the amount due."  Butler v. Butler, 219 Va. 164, 166, 247 S.E.2d 353, 354 (1978).  In the present case, the only "liability" due on the part of NSI is the provision of its Internet domain name services to the judgment debtor.  Code § 8.01-511.  Although, as Umbro points out, domain names are being bought and sold in today's marketplace, we are not willing to sanction the garnishment of NSI's services under the terms of our present garnishment statutes.  To do so would allow Umbro to "step into the shoes" of the judgment debtor.  Harkins, 45 F.3d at 833.  Even though the Internet is a "new avenue[] of commerce," Intermatic, 947 F. Supp. at 1229, we cannot extend established legal principles beyond their statutory parameters.  See Bickle v. Chrisman's Adm'x, 76 Va. 678, 691 (1882) (garnishment "cannot be enforced beyond [its] statutory authority").

24

For these reasons, we will reverse the judgment of the circuit court, dismiss the garnishment summons, and enter final judgment in favor of NSI.[14]

Reversed and final judgment.

SENIOR JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO joins, dissenting.

Relying heavily on decisions of federal trial courts, the majority concludes that a domain name registration is the product of a contract for services between the registrar and the registrant. The majority goes on to decide that such a contract is not subject to garnishment because it is not "a liability," as the term is used in Code § 8.01-511 ("On a suggestion by the judgment creditor that, by reason of the lien of his writ of fieri facias, there is a liability on any person other than the judgment debtor," garnishment proceedings may be instituted). I disagree that the registration is a contract for services not subject to garnishment.

NSI, the garnishee, correctly acknowledges that the right to use a domain name is a form of intangible personal property. Code § 8.01-501 clearly provides for an execution lien on intangible personal property, that is, property not capable of being levied upon. Virginia Nat'l Bank v.

---

[14] We do not need to address NSI's remaining assignment

*Blofeld*, 234 Va. 395, 399, 362 S.E.2d 692, 694 (1987).  That lien attaches to the extent the judgment debtor has a possessory interest in the intangible property subject to the writ.  *International Fidelity Ins. Co. v. Ashland Lumber Co.*, 250 Va. 507, 511, 463 S.E.2d 664, 666-67 (1995).

Therefore, the question becomes whether the judgment debtor has a possessory interest in the domain names it registered with NSI.  In my opinion, the trial court correctly ruled that the judgment debtor, by virtue of the domain name registration agreements with NSI, has a current possessory interest in the use of the domain names, that is, a contractual right to the exclusive use of the names it has registered with NSI.

However, NSI contends that the judgment debtor's contractual rights are not subject to garnishment because they allegedly are contingent, dependent on unperformed conditions, or are like personal services.  The majority erroneously has bought into this idea.

NSI's contractual obligation to the judgment debtor already is presently due, not contingent or akin to a personal service agreement.  The judgment debtor has submitted its registration forms and paid the registration fees.  NSI has completed the registration of the judgment

_____

of error.

26

debtor's Internet domain names under NSI's "first come, first served" policy, and the judgment debtor acquired the right to the exclusive use of the domain name for an initial period of two years.

Because NSI has received everything required to give the judgment debtor the exclusive right to use the domain names it registered, the contractual right, a valuable asset, is the intangible personal property in which the judgment debtor has a possessory interest.  This right is a "liability" within the meaning of Code § 8.01-511 and is subject to garnishment.

In my view, contrary to the majority's conclusion, this right exists separate and apart from NSI's various services that make the domain names operational Internet addresses. These services, as the trial court correctly ruled, are mere conditions subsequent that do not affect the garnishment analysis.

Consequently, I would affirm the judgment of the trial court.