ELEANOR P. TEED, ETC., ET AL.

v.

MALCOLM H. POWELL, ETC., ET AL.

Record No. 860006

September 23, 1988

Present: All the Justices

*C. Waverly Parker; J. Thomas Province* for appellants.
No brief or argument for appellees.

POFF, J., delivered the opinion of the Court.

This appeal arises from a dispute over the classification of certain property in a decedent's estate. Adelaide E. Powell died September 29, 1981, leaving a will executed in 1979 which read in pertinent part:

> I give, devise and bequeath my real estate . . . on which I now reside, to my two sons, Malcolm Henry Powell and B. Stanley Powell, also all livestock and farm machinery which I may own at my death in equal shares, share and share-alike.
> My intangible personal property . . . I give and bequeath to my four daughters, to-wit: Eleanor P. Teed, Carolyn P. Bordwell, Annette P. DeJarnette and Julia P. Beane.

The two sons were appointed executors of their mother's will. Because the will contained no residuary clause, one of the daughters, Eleanor, qualified as administratrix of the tangible personal estate other than the livestock and farm machinery. The executors filed a bill of complaint in aid of settlement of the estate. The bill named as respondents Eleanor, individually and as administratrix, and her three sisters. The chancellor appointed a guardian ad litem to represent the interests of Annette P. DeJarnette, an incompetent. In answer to the bill of complaint, the other three sisters admitted the facts alleged, and the issues framed by the parties were referred to a commissioner in chancery.

In a final decree entered October 2, 1985, the chancellor confirmed the commissioner's report in part. On appeal to this Court, the respondents challenge the chancellor's rulings sustaining three exceptions.

## I.

In his report, the commissioner concluded that 1600 bales of hay left on the decedent's land at the time of her death were "certainly assets of the intestate estate." The chancellor ruled that

"the 1600 bales of hay are livestock and therefore under the terms of the will . . . pass equally to Malcolm H. Powell and B. Stanley Powell". We need cite no authority to hold, as we do, that the hay was tangible personal property. Because it was unnamed in the will, it passed under the laws of descent and distribution to the decedent's two sons and four daughters.[1] Code § 64.1-11; *see also id.* § 64.1-1.

## II.

Included in the inventory of the decedent's estate were three shotguns and a rifle. Stanley Powell claimed the firearms as gifts *inter vivos* made by his mother on special occasions. Sustaining an exception to the commissioner's report, the chancellor upheld Stanley's claim.

Code § 55-3 provides as follows:

> No gift of any goods or chattels shall be valid unless by deed or will, or unless actual possession shall have come to and remained with the donee or some person claiming under him. If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession within the meaning of this section. This section shall not apply to personal paraphernalia used exclusively by the donee.

Stanley had lived all his life with his mother in her home. Applying the statutory proscriptions, the commissioner concluded that, even if the mother had intended to surrender title to the firearms during her lifetime, the transfers failed as gifts for lack of actual possession by the son. Yet, Stanley argued that the weapons were "paraphernalia used exclusively by the donee" and, hence, were exempt from the statutory proscriptions. In response, the daughters argued that the word "paraphernalia" must be construed as it was defined in the ancient civil law to include only selective items of personalty vested in a wife. *See, e.g.,* 2 W. Blackstone, Commentaries *435-36.

   The commissioner rejected the interpretations of the term "paraphernalia" urged by the parties. The commissioner applied a

---

[1] Counsel averred at bar that the hay has been sold and the proceeds placed in escrow pending appeal.

definition of the term he found "more closely accords with modern usage", namely, "personal belongings, *esp.*, articles of adornment or attire, trappings; also the articles that compose an apparatus, outfit or equipment; . . . appointments or appurtenances in general." Oxford English Dictionary 2075 (1971).

For purposes of Code § 55-3, we adopt that definition, and we agree with the commissioner that the firearms in issue do not satisfy that definition. We hold, therefore, that the firearms are assets of the decedent's intestate personal estate.

### III.

The commissioner heard the testimony of Edward A. DeJarnette *ore tenus*. In 1968, DeJarnette, formerly the husband of the decedent's daughter Annette, entered into an oral agreement with his mother-in-law to subdivide her land abutting a highway. The parties expected the land to be condemned to widen the highway and "the thought [was] that the lots would be more valuable than just acreage." DeJarnette was a real estate broker, and it was felt that he could negotiate a more favorable settlement with the highway department if the property was titled in his name.

DeJarnette testified that "[t]he arrangement was that I would pay for the surveying and the recordation of the lots, and the taxes until . . . such time as they would be sold or condemned". At that time, he said, he was to be reimbursed all the expenses he had paid, and the net proceeds were to be divided between himself and his mother-in-law.

The subdivision contained 16 lots. Mrs. Powell retained the two lots on which her residence stood and conveyed the rest by general warranty deed to DeJarnette. DeJarnette and his wife executed a deed of trust on the property securing their note payable to Mrs. Powell in the sum of $7,000. DeJarnette testified that the parties never intended the note to be consideration for the transaction and that, some time before Mrs. Powell wrote her will, she had marked the note paid and returned it to him.

The land never was condemned, DeJarnette and his wife were divorced, and the 14 lots remained titled in DeJarnette's name at the time of Mrs. Powell's death. At the hearing, DeJarnette offered to convey the lots to any grantee the court named if the lien of the deed of trust was released and he was repaid the expenses he had incurred pursuant to his agreement with the decedent.

The commissioner found that "the lots of land owned of record by Edward A. DeJarnette are . . . an intangible asset of the Estate and thus are owned by the four daughters". The chancellor, finding that the lots were "conveyed to DeJarnette merely as a convenience to Adelaide E. Powell" and that "the transaction [was] no more than a family bookkeeping entry", ruled that the property "comprised intestate real estate at her death, so that the same passed to all the parties to this suit in equal undivided shares". Accordingly, the court ordered DeJarnette to convey the land to special commissioners to be sold by them in aid of partition among the decedent's six children.

■ We do not agree that Mrs. Powell's interest in the lots at the time of her death was a real-property interest. The oral agreement was a bilateral contract with reciprocal rights and obligations. The transfer of title to the property was designed to facilitate disposal of the lots at an enhanced price for the mutual benefit of the contracting parties. Although the general warranty deed vested DeJarnette with unilateral power to convert the entire asset to his own use, the note and the deed of trust afforded Mrs. Powell security against the breach of their contract. After Mrs. Powell cancelled the note and returned it to DeJarnette, the only right remaining to her was the right to collect one-half of the net proceeds of any sale made of the property. Hence, at the time of her death, Mrs. Powell's sole interest, arising as a matter of contract right, was a chose in action. Such an interest is intangible personal property. *See generally* R. Brown, The Law of Personal Property § 1.7, at 11 (3d ed. 1975).

We hold, therefore, that the decedent's interest in the 14 lots titled in DeJarnette's name passed under Mrs. Powell's will to her four daughters in equal shares.[2] We will reverse the final decree and remand the cause to the trial court for further proceedings in accord with our decision.

*Reversed and remanded.*

---

[2] In their assignments of error, the daughters complained that the trial court erred in ruling that "the interest of the decedent in and to fourteen lots . . . was real estate passing by intestacy to all parties, when in fact such interest was intangible personalty". The assignment of error does not raise an issue concerning disposition of the interest DeJarnette surrendered in the court below, and our holding is confined to the decedent's interest.