**In re Marlene MOFFETT, Debtor.**

**Tidewater Finance Company, Appellant,**

**v.**

**Marlene Moffett, Appellee.**

**No. CIV. 02–1318–A.**

United States District Court, E.D. Virginia. Alexandria Division.

Feb. 3, 2003.

James Robert Sheeran, Tidewater Finance Company, Office of the General Counsel, Chesapeake, VA, for appellant.

Gerald Martin O'Donnell, Klinette Hunter Kindred, Law Offices of Robert Weed, Alexandria, VA, for appellee.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the Court on appeal from the United States Bankruptcy Court of the Eastern District of Virginia.

### I. Background

Appellee Marlene Moffett ("Moffett") purchased a 1998 Honda Accord from Hendrick Honda on January 22, 2001. As part of the purchase agreement, Moffett signed a Retail Installment Contract, under which she agreed to pay $20,024.45, with interest at 19.95% per annum, in exchange for the vehicle. In fact, the contract provided that Moffett would pay the first of her 60 monthly installments of $534.66 on March 8, 2001.

Additionally, under the terms of the contract, Moffett granted Hendrick Honda a security interest in the vehicle. Moreover, Hendrick Honda and Moffett agreed that in the event of default, Hendrick Honda had a right to repossess the vehicle, subject to Moffett's right to redeem the vehicle.

Subsequently, Hendrick Honda assigned its rights under the contract to Tidewater Finance Company ("Tidewater"), the appellant in this case. In fact, a certificate of title issued on February 13, 2001 indicates that Moffett is the owner of the vehicle, and Tidewater is the holder of a valid lien on the vehicle.

After approximately one year of timely payment, Moffett failed to make the payments that were due in March and April 2002. In response, Tidewater repossessed the vehicle in the early morning hours of April 25, 2002. That same day, Moffett filed a voluntary petition for protection under Chapter 13 of the Bankruptcy Code.

A week later, on May 1, 2002, Moffett's attorney faxed a letter to Tidewater demanding return of the vehicle and citing the bankruptcy filing and the accompanying protection of the Bankruptcy Code's automatic stay provisions. In reply, Tidewater filed for relief from the automatic stay provisions, by claiming that its repossession of the vehicle stripped Moffett and the bankruptcy estate of any and all property interests in the vehicle, save bare legal title to the vehicle.

Following two hearings on the matter, the bankruptcy court concluded that Moffett had property rights, in excess of bare legal title, in the vehicle notwithstanding Tidewater's repossession. The bankruptcy court went on to conclude that because Moffett had property rights in the vehicle

at the time of the filing for bankruptcy, those rights passed to the bankruptcy estate. Therefore, the bankruptcy court held that the Bankruptcy Code allowed Moffett to deaccelerate the note and redeem the collateral by making arrearage payments in accord with the Chapter 13 plan.

Tidewater appeals the decision of the bankruptcy court. Indeed, it appears that Tidewater's appeal is strictly limited to the issue of whether the bankruptcy court correctly decided that upon repossession of the vehicle, Moffett retained ownership interest in the vehicle. Importantly, Tidewater does not seek any relief in this appeal that would somehow upset or alter the existing Chapter 13 plan,[1] nor does it seek to repossess the vehicle at this time to sell it. Rather, Tidewater wants this Court to find that the bankruptcy court's determination of the ownership issue was incorrect and that until such time as Moffett completes redemption payments on the vehicle, Tidewater is the equitable owner of the vehicle and Moffett owns no more than bare legal title to the vehicle.

## II. Standard of Review

■ A district court has jurisdiction over an appeal from a bankruptcy court pursuant to 28 U.S.C. § 158(a). *Educ. Credit Mgmt. Corp. v. Buchanan*, 276 B.R. 744, 749 (N.D.W.Va.2002). A bankruptcy court's conclusions of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *Id.* (citing *In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999)); *see also* Fed. R. Bankr.P. 8013.

## III. Analysis

### A. Jurisprudential Issues

■ The first issue of concern for the Court in this appeal is whether the Court

---

1. Indeed, the bankruptcy plan has been confirmed by the bankruptcy court and Moffett is making payments under that plan.

has jurisdiction to hear the appeal. This concern was raised largely because of the limited relief that Tidewater seeks in this appeal. Indeed, Tidewater readily admits that it is no longer seeking relief from the automatic stay imposed by the Bankruptcy Code. Rather, Tidewater is appealing the somewhat collateral issue of the nature and extent of its ownership rights in the vehicle.

In particular, in making its determination that the relief from stay should be denied, the bankruptcy court determined that "Tidewater's argument that [Va.Code Ann.] § 8.9A–619(c) gives the secured creditor the right to full title to collateral before disposition is flatly contradicted" by Virginia law. (*See Tidewater Fin. Co. v. Moffett (In re Moffett)*, 288 B.R. 721, 727 (Bankr.E.D.Va.2002)(emphasis in original))(hereinafter "Mem. Op."). It is this ownership issue that Tidewater claims is still in contention between the parties and that it seeks to overturn.

■ The requirement of standing to maintain any action in a federal forum is governed by Article III of the United States Constitution. *See* U.S. Const. art. III. The Supreme Court has held that Article III's "case and controversy" requirement dictates that three elements must be present to confer standing upon the litigants in the action: (1) the party seeking relief must have suffered injury in fact; (2) there must be a causal link between the action complained of and the injury received; and (3) the court must be able to fashion redress for the injured party. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted).

In this case, Tidewater claims that it suffered an injury in fact when the bankruptcy court stripped it of what it believed was a valid equitable ownership right in the vehicle. Furthermore, Tidewater states that Moffett's demand for return of the vehicle and the bankruptcy court's accession to this demand directly caused Tidewater to lose what it believed was a valid equitable ownership interest in the vehicle. Lastly, Tidewater claims that if this Court were to overturn the decision of the bankruptcy court and declare that Tidewater is the equitable owner of the vehicle until such time as Moffett's redemption payments are complete, then Tidewater would be restored to the ownership rights it believes that it rightfully possesses. Given these three claims, this Court concludes that Tidewater has satisfied the constitutional requirements for Article III standing.

■ But further jurisdictional concerns remain. In particular, the Supreme Court has cautioned that even where the standing threshold is initially met by the parties, the action may at some point cease to meet the case and controversy requirements of Article III. In fact, when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party" the case becomes moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)(quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)).

■ In addition to the doctrine of constitutional mootness, a district court reviewing a matter on appeal from the bankruptcy court must also concern itself with the doctrine of equitable mootness. *See McLean Square Assocs. v. J.W. Fortune, Inc. (In re McLean Square Assocs.)*, 200 B.R. 128, 131 (E.D.Va.1996)(Ellis, J.). The Fourth Circuit stated that equitable mootness occurs "when implementation of the

[reorganization] plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." *Id.* at 132 (quoting *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 96 (4th Cir. 1988)).

■ The mootness question is raised in this case because since the time of the decision of the bankruptcy court, announced on June 19, 2002,[2] Moffett has (1) been in constant use and possession of the car; (2) resumed monthly installment payments to Tidewater; and (3) made monthly payments in accord with the Chapter 13 plan to cure the default and arrearage owed to Tidewater. Furthermore, the mootness issue is pressed by the fact that Tidewater no longer seeks the relief it originally sought in the bankruptcy court. Indeed, Tidewater does not seek relief from the stay granted by the bankruptcy court in order to sell Moffett's vehicle. Rather, Tidewater appeals only the ownership issue, necessarily decided by the bankruptcy court in order to arrive at its decision denying relief.

Despite these concerns, however, the Court believes that a live case and controversy still exists before it. In particular, the issue of the ownership of the vehicle, although not addressed in the bankruptcy court's order, was an issue squarely presented to, and decided by, the bankruptcy court. (*See* Mem. Op. at 726–27); *see also In re Urban Development Co.*, 452 F.Supp. 902, 905 (D.Md.1978)(finding that collateral issues presented to the bankruptcy court

below are reviewable by the district court on appeal).

Furthermore, the issue of equitable ownership to the vehicle is still live between the parties because Tidewater is asserting that it has an equitable ownership interest in the vehicle until such time as redemption payments are completed. In contrast, Moffett, relying on the decision of the bankruptcy court, claims that she is the equitable owner of the vehicle. Thus, the Court can, if it agrees with Tidewater, declare that Tidewater is the current equitable owner of the vehicle. Indeed, such a decision would change the current legal relationship between the parties and would redress the injury Tidewater claims. Therefore, because this Court can fashion relief that would have a practical effect and would not injure the equitable interests of third parties, the Court finds that this appeal is neither constitutionally nor equitably moot.

**B. The Bankruptcy Court's Decision**

When a debtor files for protection under Chapter 13, the Bankruptcy Code immediately and automatically protects the debtor's existing assets. *See* 11 U.S.C. §§ 362(a)(3) and (4). Specifically, the Bankruptcy Code stays any action to enforce a lien against the debtor for a prepetition debt. *See id.* at 362(a)(5).

Furthermore, the filing of the petition for bankruptcy creates the "bankruptcy estate," which is an entity created to hold "all legal and equitable interests of the debtor in property as of the commencement of the case[.]" *Id.* at § 541(a)(1). The bankruptcy estate holds all of the debtor's property interests, regardless of whether the debtor is in possession of such property or not. *See id.* Indeed, those in possession of the property of a Chapter 13 debtor must release that property to the

---

**2.** Although the formal written opinion of the bankruptcy court was not released until July 8, 2002, the decision, and underlying reasons therefor, were announced by the bankruptcy court from the bench on June 19, 2002.

custody of the bankruptcy trustee. *See id.* at § 542(a). However, when the property at issue is in the possession of a secured creditor, the secured creditor need not surrender control of the property until it is provided adequate protection for its security interest. *See Massey v. Chrysler Fin. Corp. (In re Massey),* 210 B.R. 693, 696 (Bankr.D.Md.1997).

▇ The issue of what property interests are held by the debtor at the time of the bankruptcy filing is resolved by reference to state law, unless federal law specifically addresses the issue. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)(indicating that bankruptcy estate includes property in which debtor has some cognizable ownership interest greater than bare legal title, even if debtor does not have possession). Therefore, in this case, the ownership issue is determined by reference to the law of Virginia.

Tidewater claims that the bankruptcy court erred in making this Virginia law assessment. Specifically, Tidewater claims that the Uniform Commercial Code, as adopted by Virginia,[3] and the Virginia motor vehicle registration statutes[4] both plainly indicate that upon repossession, the secured creditor obtains all the elements of property ownership, except legal title to the property.

Taking a combined reading of these two statutes, Tidewater claims that at the moment it repossessed the vehicle, it had all incidents of ownership to the vehicle, save Moffett's right to redeem and the bare legal title to the vehicle. Therefore, Tidewater claims that the only interests that passed to the bankruptcy trustee, and therefore held by Moffett now, are bare legal title and the legal right to redemption. *See Whiting Pools,* 462 U.S. at 205 n. 10, 103 S.Ct. 2309 ("where the debtor holds bare legal title without any equitable interest, . . . the estate acquires bare legal

**3.** Specifically, *see* Va Code Ann. § 8.9A–623:

Right to redeem collateral (a) Persons that may redeem. A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral. (b) Requirements for redemption. To redeem collateral, a person shall tender: (1) fulfillment of all obligations secured by the collateral; and (2) the reasonable expenses and attorney's fees described in § 8.9A–615 (a)(1). (c) When redemption may occur. A redemption may occur at any time before a secured party: (1) has collected collateral under § 8.9A–607; (2) has disposed of collateral or entered into a contract for its disposition under § 8.9A–610; or (3) has accepted collateral in full or partial satisfaction of the obligation it secures under § 8.9A–622.

**4.** In particular, *see* Va Code Ann § 46.2–633:

Except as otherwise provided in § 46.2–615 in the event of the transfer by operation of law of the title or interest of an owner in and to a motor vehicle, trailer, or semitrailer registered under the provisions of this chapter to anyone as legatee or distributee or as surviving joint owner or by an order in bankruptcy or insolvency, execution sale, sales as provided for in § 43–34, repossession on default in the performing of the terms of a lease or executory sales contract or of any written agreement ratified or incorporated in a decree or order of a court of record, or otherwise than by the voluntary act of the person whose title or interest is so transferred, the transferee or his legal representative shall apply to the Department for a certificate of title, giving the name and address of the person entitled to it, and accompany his application with the registration card and certificate of title previously issued for the motor vehicle, trailer, or semitrailer, if available, together with whatever instruments or documents of authority, or certified copies of them, are required by law to evidence or effect a transfer of title or interest in or to chattels in the case. The Department shall cancel the registration of the motor vehicle, trailer, or semitrailer and issue a new certificate of title to the person entitled to it.

title without any equitable interest in the property." (Quoting 124 Cong. Rec. 33999 (1978) (remarks of Sen. DeConcini))).

■ However, what Tidewater misconstrues, and what the bankruptcy court and this Court agree is essential to a Virginia law analysis of this claim, is the very nature of the right of redemption. Indeed, Tidewater claims that the right of redemption is a legally separate right, an abstraction that is no more than a chose in action or at best, intangible personal property. *See Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80, 85 (2000). But the *Network Solutions* case does not state nearly as broad a proposition as Tidewater indicates. Indeed *Network Solutions* stands only for the proposition that "[w]hen property of a judgment debtor is not capable of being levied on, as in the case of intangible personal property, such property is nevertheless subject to [an] execution lien." *Id.*

■ Moreover, Tidewater's claim that the right of redemption is simply a chose in action is likewise meritless. While true that contractual rights of redemption are not property interests, *see Teed v. Powell*, 236 Va. 36, 372 S.E.2d 131, 133–34 (1988), statutory rights of redemption are rights to exercise a form of control over the property itself. *See* Va.Code Ann. § 8.9A–623.

Indeed, the statutory right of redemption provides that the repossessing creditor is restricted in its ability to exercise control over the property. *See id.* In particular, the right to redeem mandates that before the creditor may dispose of the property, the debtor has the ability to cure the default and redeem the collateral. *See id.* This right is a right in the property itself because it limits the manner in which the creditor may dispose of the property a fundamental incident of ownership. *See id.* Consequently, because the debtor re-

tains rights in the property until such time as the right to redeem is extinguished, this Court cannot find that all equitable rights in the vehicle pass to Tidewater at the time of repossession.

Finally, and perhaps most tellingly, Tidewater remains unable to distinguish this case from the controlling case on the issue in this district, *Anderson v. Assocs. Commercial Corp. (In re Anderson)*, 29 B.R. 563 (Bankr.E.D.Va.1983)(Shelley, J.). In *Anderson*, the secured creditor, a finance company, repossessed a vehicle owned by the debtor, an individual petitioning for bankruptcy protection, after the debtor defaulted on payments. *See id.* at 563–64. The creditor sought relief from the automatic bankruptcy stay in order to sell the repossessed vehicle. *See id.* at 564. The bankruptcy court denied relief, however, holding that so long as the debtor possessed the opportunity and intent to redeem the vehicle, the creditor could not obtain the equitable rights necessary to sell the vehicle. *See id.* at 564–65.

The reconciliation Tidewater offers for the proposed differing result in this case and *Anderson* is that (1) *Anderson* did not specifically discuss ownership rights in the vehicle; and (2) *Anderson* was decided before the Supreme Court announced its *Whiting Pools* decision. But these differences are not convincing. In fact, Judge Shelley's decision in *Anderson* was premised on the fact that the secured creditor did not own the vehicle. *See id.* at 565–66 (holding that the creditor had a secured interest in the collateral; and *ipso facto* not an equitable ownership interest in the collateral).

Furthermore, though *Anderson* predates *Whiting Pools*, its decision does not contravene *Whiting Pools*. Indeed, consistent with *Whiting Pools* Judge Shelly

reviewed the relevant state law[5] and in light of the governing state law determined that at best, the creditor had a secured interest in the vehicle which was adequately insured. Similar facts in this case indicate that a similar result should obtain. Consequently, the Court should affirm the decision of the bankruptcy court that Tidewater holds only a secured interest in the vehicle, not an equitable ownership interest.

### IV. Conclusion

For the foregoing reasons, the Court finds that Moffett has never transferred equitable ownership rights in the vehicle in dispute in this case. Therefore, the bankruptcy court's decision will be affirmed. An appropriate Order will issue.

5. Judge Shelley turned to former Va.Code Ann. §§ 8.9–505–06, which provided redemption rights in collateral analytically identical to the rights provided in the current Virginia adoption of the UCC applicable to this case. *See* Va.Code Ann. § 8.9A–623.