PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Lacy, S.J.[1]

MARCUS, SANTORO & KOZAK, P.C., ET AL.

                                         OPINION BY
v. Record No. 062357            JUSTICE G. STEVEN AGEE
                                         November 2, 2007
HUNG-LIN WU, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Joseph Canada, Jr., Judge

Marcus, Santoro & Kozak, P.C. (MSK) and Kaufman & Canoles (K&C) (collectively "the Firms") appeal from the judgment of the circuit court of the City of Virginia Beach which found both parties liable upon a garnishment summons for the payment of funds held in their respective trust accounts from a judgment debtor who was their client. The circuit court determined that the lien of a writ of fieri facias under Code § 8.01-501 required the Firms to cease disbursing funds from their trust accounts in satisfaction of accrued legal fees and related costs and to pay those funds to a judgment creditor effective with the issuance of the writ of fieri facias. For the reasons set forth below, we will affirm the judgment of the circuit court.

BACKGROUND AND PROCEEDINGS BELOW

On May 12, 2005, Hung-Lin Wu and the Wu Trust (collectively "Wu") obtained two judgments in a Florida state court, one

_____

[1] Justice Lacy participated in the hearing and decision of this case prior to the effective date of her retirement on August 16, 2007.

against Stanley F.C. Tseng and another against several business entities affiliated with Tseng (collectively "Tseng").[2] Wu domesticated the judgments in the Circuit Court of the City of Virginia Beach on August 16, 2005.

Tseng retained MSK to represent him personally, and K&C to represent his affiliated business entities, with regard to various proceedings initiated by Wu in an attempt to collect on the judgments in both Virginia and Florida. Tseng entered into a written representation agreement with each law firm which provided that he would deposit a sum certain into a trust account maintained by the law firm as a "retainer." The written agreement with K&C provided "This retainer will be applied toward services heretofore and hereafter rendered and out-of-pocket costs," but gave no further explanation as to the basis for withdrawals from the trust account. The written agreement with MSK did not specifically address the disbursement of funds. As agreed, Tseng deposited $155,000 into K&C's trust account and $125,000 into MSK's trust account. K&C made the first disbursement from its trust account for payment of its fees and costs on August 26, 2005. MSK made the first disbursement from its trust account for fees and costs on August 19, 2005.

---

[2] The judgment against Tseng was for $8,459,789 and the judgment against the business entities was for $11,279,836.

2

In an attempt to collect on the judgments, Wu requested that the Clerk of the Circuit Court of Virginia Beach deliver a writ of fieri facias against Tseng to the Sheriff of Virginia Beach pursuant to Code § 8.01-466.[3]  The writ was delivered to the sheriff on October 7, 2005.  In its June 14, 2006 letter opinion, incorporated into the final order, the circuit court found that K&C and MSK were served with a notice of the lien of fieri facias on October 7, 2005.  The Firms made no assignment of error to that finding.  Tseng was not served with the notice of lien.

On October 14, 2005, the circuit court issued a garnishment summons against each law firm.  Each garnishment summons contained a new writ of fieri facias and provided another notice of the lien of fieri facias.  Tseng was served with the MSK garnishment summons on October 21, 2005 and MSK was served with that garnishment summons on October 24, 2005.  K&C and Tseng were served with the K&C garnishment summons on November 14, 2005.  The Firms had continued to disburse funds from their respective trust accounts during the period between the date of the issuance of the writ of fieri facias and service of notice on the Firms, October 7, 2005, and the dates of service of the respective garnishment summonses.

---

[3] A writ of fieri facias commands "the officer . . . to make the money therein mentioned out of the goods and chattels of the

3

On November 18, 2005, the return date on the garnishment summonses, the Firms filed separate motions to dismiss the garnishments.  In addition, each law firm delivered to the circuit court a check payable to Wu in an amount equal to the balance of its trust account as of the date that law firm and Tseng had been served the applicable garnishment summons.  K&C paid $48,600.13, the remaining balance in its account as of November 14, 2005 when K&C and Tseng were served the garnishment summons.  MSK paid $19,574.53, the remaining balance in its account as of October 24, 2005, the date by which both it and Tseng had been served with the garnishment summons.

In the motions for summary judgment the Firms contended that they had remitted all the funds to which Tseng was entitled.  At a hearing and in memoranda filed in the circuit court, Wu contended that the law firms should have remitted amounts equal to the account balances on October 7, 2005, the date the writ of fieri facias was delivered to the sheriff, and therefore that the sums remitted were deficient.  Citing Code § 8.01-501 for the proposition that the issuance of the writ of fieri facias on October 7 perfected a lien on the funds in the trust accounts, Wu contended that the Firms were obliged to cease disbursing funds from their respective trust accounts on

person against whom the judgment is."  Code § 8.01-474.

4

that date and were liable to him for any funds disbursed after that date.

The Firms did not contest in the circuit court that Wu could proceed by garnishment, but argued the garnishment process he used was ineffective as a matter of law to reach any funds prior to the actual date of service of the garnishment summons. The Firms asserted that they were "person[s] making a payment to the judgment debtor" under Code § 8.01-502, and as such, the liens created under Code § 8.01-501 were ineffective against them without the statutory conditions precedent being met. That statutory condition precedent under Code § 8.01-502 included service of a notice of lien on both the Firms as garnishees and the judgment debtor, Tseng. For that reason, the Firms contended they were entitled to disburse funds from the trust accounts until the date on which both they and Tseng were served with the garnishment summonses.

In its letter opinion, the circuit court ruled that the Firms were liable to Wu for the balances remaining in the respective trust accounts as of October 7, 2005, because: "According to [Code] § 8.01-501, the lien of fieri facias was effective on the date it was delivered to the sheriff, which the parties agree was October 7, 2005, unless the § 8.01-502 provision applies." The circuit court rejected the Firms' argument that they were "person[s] making a payment to the

5

judgment debtor" under Code § 8.01-502 when they disbursed funds from the trust accounts. The circuit court opined that funds held in the trust accounts represented payment in advance for legal fees not yet incurred and that the balances in the trust accounts at any particular time remained Tseng's property. The circuit court found that although the Firms would be obligated to refund to Tseng any portion of an advanced legal fee that had not been earned when the representation terminated, a "potential future obligation" to pay Tseng did not qualify the law firms as "person[s] making a payment to the judgment debtor." Accordingly, the circuit court ruled that the lien under the writ of fieri facias on the funds in the trust accounts was effective on October 7 despite the lack of service of a notice of lien on Tseng until a later date.

Pursuant to its letter opinion, the circuit court entered an order denying the Firms' motions for summary judgment. The circuit court ordered that K&C pay to Wu $67,903.24, which represented the amount K&C disbursed from its trust account between October 7, 2005 and November 14, 2005, the date by which service of the K&C garnishment summons was made on both K&C and Tseng. The circuit court also ordered that MSK pay to Wu $27,661.76, which represented the amount MSK disbursed from its trust account between October 7, 2005, and October 24, 2005, the

6

date by which the MSK garnishment summons had been served on MSK and Tseng.  We awarded the Firms this appeal.

DISCUSSION

The issues raised in this appeal solely involve issues of law, which we review de novo.  Janvier v. Arminio, 272 Va. 353, 363, 634 S.E.2d 754, 759 (2006); Sheets v. Castle, 263 Va. 407, 410, 559 S.E.2d 616, 618 (2002).

The Firms make six assignments of error to the judgment of the circuit court which can be condensed to four arguments:  (1) The circuit court erred in ruling that the funds in the Firms' trust accounts were property owned by Tseng instead of a contract obligation by the Firms to pay Tseng any unearned funds upon the termination of representation;  (2) The circuit court erred in holding the lien of the writ of fieri facias "directly reached the trust accounts" instead of the Firms' contractual obligation to Tseng; (3) The circuit court erred in its application of Code § 8.01-502 by finding that the Firms were not "persons making a payment to the judgment debtor", and (4) the circuit court "erred in holding that the execution lien" of the writ of fieri facias under Code § 8.01-501 "was perfected and fully effective" as to the Firms upon delivery of the writ to the sheriff without "service of the notice of that lien upon anyone."  We address each argument in turn.

A.  Tseng's Interest in the Trust Accounts

The Firms argue that Tseng's interest in the trust accounts, into which he deposited his funds under the retainer agreements, was only a bare contract right.  They contend Tseng had no property right or ownership interest in the trust account funds.[4]  Instead, the Firms argue that they and "Tseng were in a debtor-creditor relationship" essentially in the same capacity as a commercial bank and a depositor.  The Firms posit they only had a "legally enforceable contractual obligation . . . to repay Tseng the unearned and unused retainer deposits."  Thus, the Firms contend the circuit court's finding that the funds in the trust account "remain the property of the client" is in error.

Our jurisprudence clearly supports the conclusion reached by the circuit court.  An attorney who receives funds from a client for the future payment of legal fees for services not yet rendered holds those funds in trust.  The funds are the corpus of a trust of which the attorney is the trustee and the client the beneficiary.  In re Equip. Servs., 290 F.3d 739, 746 (4th Cir. 2002) (citing Indian Motocycle Assocs. v. Massachusetts Housing Fin. Agency, 66 F.3d 1246, 1254-55 (1st Cir. 1995)) ("the relationship is a trust arrangement in which the attorney holds the retainer for the client" and "the retainer so held,

_____

[4] The Firms did not contend the trust status (and Tseng's equitable ownership interest) in the funds in the trust accounts ended before the lien of fieri facias attached on October 7,

8

less any fees charged against it, constitutes the property of the client"). Although not a case involving an attorney's trust account, we explained such a general fiduciary relationship, and distinguished it from a debtor/creditor relationship, in Broaddus v. Gresham, 181 Va. 725, 26 S.E.2d 33 (1943).

> The question frequently arises as to whether the relation created is a trust or a debt. With respect to this distinction, in Scott on Trusts, Vol. 1, section 12.1, p. 86, the author says: "A trust involves a duty to deal as fiduciary with some specific property for the benefit of another. A debt involves a merely personal obligation to make payment of a sum of money to another. A creditor as such has merely a personal claim against the debtor. He can enforce his claim by judicial proceedings to reach the debtor's property and subject it to the satisfaction of his claim, but until he does so he has no legal or equitable interest in the property of his debtor. *** On the other hand, the beneficiary of a trust has an equitable interest in the trust property. The beneficiary of a trust has something more than a mere chose in action, something more than the merely personal claim which a creditor has against the debtor. He is equitable owner of the trust property. If the trustee transfers the trust property to a person who is not a *bona fide* purchaser, or if the trustee becomes insolvent, the beneficiary is still entitled to the property . . . ."

Id. at 731-32, 26 S.E.2d at 35-36.

The Firms were in a fiduciary relationship to Tseng, holding his property (the funds he tendered to the Firms) as the corpus of a trust of which Tseng was the beneficiary. Nothing in either representation agreement evidences any other type of

---

2005, by virtue of any contractual agreement between the parties.

9

relationship.  The Firms were thus under a fiduciary duty to, among other things, return the funds in the fiduciary trust account to Tseng upon his request.  This obligation, fiduciary in nature, did not convert the parties' relationship to that of debtor and creditor as to the trust funds although Tseng could have sought many of the same remedies as a creditor had the Firms failed to discharge their fiduciary duty.  We reiterated this point in Broaddus:

> The fact that the trustee may be indebted to the beneficiary in a fixed and definite amount which is due and payable immediately and which may be recovered by the beneficiary in an action at law, is not, as contended by the appellant, determinative of the existing relation.  If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.  This does not mean, however, that a trustee who is under an immediate and unconditional duty to pay to the beneficiary money held in trust has ceased to be a trustee and has become a debtor.

Id. at 732-33, 26 S.E.2d at 36 (quoting Restatement of Torts §§ 198-199) (internal quotation marks omitted).

We specifically applied these principles in the context of trust accounts held by an attorney in Virginia State Bar v. Goggin, 260 Va. 31, 530 S.E.2d 415 (2000), and plainly held the client had an ownership interest as a trust beneficiary, not a mere creditor:

> Clients' funds deposited in an attorney's trust account are funds held in trust.  As such, the claim of such clients for return of funds is more than

10

> merely a personal claim against the attorney for the payment of the sum of money on deposit. The clients retain an equitable or beneficial ownership interest in the funds. The deposit of one client's funds in an account with funds of other clients does not destroy the beneficial interest of the clients in the funds so deposited. Thus, the clients are entitled to those funds to the extent their equitable ownership interests can be traced.

Goggin, 260 Va. at 33, 530 S.E.2d at 416-17 (citing Broaddus, 181 Va. at 731-32, 26 S.E.2d at 35-36); accord Iowa Supreme Court Bd. Of Professional Ethics & Conduct v. Frerichs, 671 N.W.2d 470, 476 (Iowa 2003) (Advance payment for future services "represent[s] money that still belongs to the client after it is paid to an attorney and must be deposited in a client trust account."); In re Lochow, 469 N.W.2d 91, 98 (Minn. 1991) ("[A]dvance payments for future services are client funds until earned. . . . Furthermore, attorney fees for payment of services to be performed in the future must be placed in a trust account and removed only by giving the client notice in writing of the time, amount, and purpose of the withdrawal, together with a complete accounting thereof.").

The Firms' analogy to a lawyer's trust account and the relationship between a bank and its depositor is untenable. While a depositor is only a creditor of the bank as to his account in the depository bank, Bennet v. First & Merchants Nat'l Bank, 233 Va. 355, 360, 355 S.E.2d 888, 890-91 (1987)

11

(citing Bernardini v. Central Nat'l Bank, 223 Va. 519, 521, 290 S.E.2d 863, 864 (1982)), that contractual indebtedness is qualitatively and legally distinct from that of the client whose own funds are being held by his attorney.  A depositor in a bank retains no ownership interest in the funds deposited, but becomes a general creditor of the bank.  Should the bank become insolvent, the depositor is a mere creditor with all others. See First Nat'l Bank v. Commercial Bank & Trust Co., 163 Va. 162, 169, 175 S.E. 775, 777 (1934) (a depositor "has no claim upon the assets of the bank superior to that of the bank's general creditors").

Should a lawyer's client, having tendered funds into the lawyer's trust account, file a petition in bankruptcy, the funds in the trust account at the time of filing are assets of the client's bankruptcy estate because of the client's ownership interest.  E.g., In re U.S.A. Diversified Prods., Inc., 196 B.R. 801, 807 (N.D. Ind. 1996) ("[T]he funds in [firm's] trust account became the property of the bankruptcy estate upon the filing of the petition."); see also 3 Collier on Bankruptcy ¶ 329.04[1][e] & n.22 (Lawrence P. King et al., eds. 15th ed. 2007) (supplying cases).  Conversely, if the attorney holding a client's funds files a petition in bankruptcy, the client's funds in the trust account are not part of the attorney's estate in bankruptcy.  Those funds remain the separate property of the

client because it is the client who has equitable ownership, not the attorney.

We hold that Tseng had an equitable ownership of the funds held by the Firms in trust and was not simply a contractual creditor of the Firms as they contend. The circuit court thus did not err in its holding that the trust account funds were Tseng's property.

B. Scope of the Garnishment Summons

Garnishment is the process by which a judgment creditor may enforce the lien of his writ of fieri facias against any debt or property due his judgment debtor that is held by a third party, the garnishee. Lynch v. Johnson, 196 Va. 516, 520, 84 S.E.2d 419, 421 (1954); Code § 8.01-511. The creditor can assert no greater rights against the garnishee than the judgment debtor, himself, possesses. Network Solutions, Inc. v. Umbro International, Inc., 259 Va. 759, 768, 529 S.E.2d 80, 85 (2000). "A garnishment summons does not create a lien itself, but, instead, is 'a means of enforcing the lien of an execution placed in the hands of an officer to be levied.' " Id. at 768-69, 529 S.E.2d at 85 (quoting Knight v. The Peoples Nat'l Bank of Lynchburg, 182 Va. 380, 392, 29 S.E.2d 364, 370 (1944)).

> Under Virginia law, a garnishment proceeding is a separate proceeding in which the judgment creditor enforces the "lien of his execution" against property or contractual rights of the judgment debtor which are in the hands of a third person, the garnishee. The

13

> summons issued in a garnishment proceeding "warns" the
> garnishee not to pay the judgment debtor's money to
> the judgment debtor, with the sanction that if the
> garnishee were to do so, it would become personally
> liable for the amount paid.

United States ex rel. Global Bldg. Supply, Inc. v. Harkins Builders, Inc., 45 F.3d 830, 833 (4th Cir. 1995) (quoting Lynch, 196 Va. at 520, 84 S.E.2d at 421) (internal citations omitted).

The Firms contend the circuit court erred by permitting Wu's garnishment to, in effect, reach the respective trust accounts for any amounts disbursed after the writ of fieri facias was issued to the sheriff and served upon them, but before there was service upon Tseng. In part, the Firms argue their position is correct because a garnishment could only reach their contractual indebtedness to Tseng and they held no property Tseng owned. We have just rejected that argument because Tseng had equitable ownership of the funds deposited in the trust accounts and possessed more than a mere contract right.

The Firms also appear to argue that a garnishment can only reach a debt the garnishee owes a judgment debtor, but no other property interest of that judgment debtor that the garnishee may hold. The Firms misapprehend the law of garnishment.

Our precedent reflects that a garnishment reaches any intangible property interest of a debtor and that property interest is not constricted to a narrow category of a debtor-

14

creditor obligation.  We succinctly explained the scope of garnishment in <u>Lynch</u>.

> If it appear upon proof or upon confession of the garnishee that he owes the judgment debtor any debt <u>or property</u>, the court "may give judgment against him . . . ."  The court cannot, [however], enter any order or judgment against the garnishee unless he is found either to be indebted to the judgment debtor, <u>or to have possession of property of such debtor</u> for which debt or property the judgment debtor himself could maintain an action at law.

196 Va. at 520, 84 S.E.2d at 422 (citing <u>Levine's Loan Office, Inc. v. Starke</u>, 140 Va. 712, 125 S.E. 683 (1924); <u>Freitas v. Griffith</u>, 112 Va. 343, 71 S.E. 531 (1911)) (emphasis added).

Thus, it is the debtor's intangible property interest that the garnishee may hold, not just an indebtedness from the garnishee, that is properly subject to garnishment.  <u>Network Solutions, Inc.</u>, 259 Va. at 768, 529 S.E.2d at 85.  The Firms, as garnishees, held the intangible equitable property interest of Tseng in their trust accounts and were under a fiduciary duty not only to hold that interest but return the property to Tseng when the trust obligation ends.   As such, Tseng's property interest in the trust accounts could be attached in garnishment by Wu as "the judgment creditor [who] enforces the 'lien of his execution' against property . . . of the judgment debtor [Tseng] in the hands of a third person, the garnishee," the Firms.

15

Harkins Builders, 45 F.3d at 833 (quoting Lynch, 196 Va. at 520, 84 S.E.2d at 421).[5]

### C. Person Making a Payment to the Judgment Debtor

The Firms contend that even if their prior arguments are incorrect, and Wu's garnishment summons can reach the trust account interests owned by Tseng, the circuit court nonetheless erred because the requirements of Code § 8.01-502 were not met. The Firms argue this is so because they were persons "making a payment to the judgment debtor" within the meaning of Code § 8.01-502 and thus entitled to require strict compliance with the statute's requirements, including service of the notice of lien upon Tseng, before the lien of the writ of fieri facias was effective.

We have not previously considered who is "a person making a payment to the judgment debtor" under Code § 8.01-502. However, if a party falls within that category, the Firms are correct that no liability under the writ of fieri facias attaches as to them until the notice requirements of the statute have been met. "Garnishment, like other lien enforcement remedies authorizing

_____

[5] The Firms cite Code § 8.01-512.3 on brief as being inconsistent with the circuit court's judgment by virtue of language in the statutory form that the garnishee withhold funds from "the date of service of this summons on you." This argument was not made in the circuit court and will not be considered under Rule 5:25. Further, other than citing the statute, the Firms do not make any further analysis in their

seizure of property, is a creature of statute unknown to the common law, and hence the provisions of the statute must be strictly satisfied." Network Solutions, Inc., 259 Va. at 768, 529 S.E.2d at 85 (citing Long v. Ryan, 71 Va. (30 Gratt.) 718, 724 (1878); Mantz v. Hendley, 12 Va. (2 Hen. & M.) 308, 315 (1808)).

If Tseng were a plumber and provided plumbing services to the Firms, then their payment to Tseng for those services would clearly be a Code § 8.01-502 "payment to the judgment debtor." In that case, the lien of fieri facias would not cause a liability on the part of the Firms for making the plumbing payment to Tseng until he had been properly served with notice of the lien. However, the Firms' claim of a statutory payment in this case is far more attenuated, if not illusory, than the foregoing example.

Without citation to any authority, the Firms contend that they made a "constructive payment" to Tseng each time the Firms withdrew money from the trust accounts to pay their legal fees and costs.[6] Based on their view that any obligation on their part to Tseng was purely a contractual indebtedness to him, the Firms argue that each time they paid themselves from the trust

_____

brief and as such, the argument would also be waived under Rule 5:17(c)(4).

[6] The record is silent as to whether Tseng consented to or knew about any particular withdrawals.

17

accounts they were "simultaneously discharging their own obligation to pay Tseng the identical sum from the retainer deposits."

This legal fiction was the basis for the Code § 8.01-502 defense the Firms argued to the circuit court.

> In effect, what has happened, Your Honor, is the law firms did the work, the obligation to pay us was incurred. Rather than give the money back to Mr. Tseng so that he could then pay us, what happened was in the nature of a setoff, and that is a payment. [O]ur obligation to Mr. Tseng for what he deposited with us was reduced pro tanto by the amount that he was obligated to pay us for our services, or reimburse us for the expenses we had incurred in the course of that representation . . . . And by discharging the obligation that we had to Mr. Tseng, we made a payment to him.

We disagree with the Firms.

There is no hint in Code § 8.01-502 that any artifice or legal fiction is contemplated by the plain language of the statute. The words of the statute mean what they say and we may not read into a statute a meaning contrary to its clear language. Blowe v. Peyton, 208 Va. 68, 74, 155 S.E.2d 351, 356 (1967) (when construing "simple, clear and unambiguous language . . . we read it to mean what it says."); Chase v. DaimlerChrysler Corp., 266 Va. 544, 547-48, 587 S.E.2d 521, 522 (2003) ("[T]he intention of the legislature . . . must be gathered from the words used, unless a literal construction would involve a manifest absurdity."). The service requirements

18

of Code § 8.01-502 apply only where the garnishee actually makes a payment to the judgment debtor.

Simply put, the Firms never made a payment to Tseng; they paid themselves. When the Firms withdrew Tseng's property from the trust accounts, they made no payment to Tseng, Wu's judgment debtor. Instead, the Firms put Tseng's money into their pockets or the pockets of their nominees, but never Tseng. Consequently, the Firms are not "person[s] making a payment to the judgment debtor" within the intendment of Code § 8.01-502 and the notice requirements of that statute cannot be claimed by them. Therefore, the failure to make service upon Tseng under that statute has no effect on the Firms' liability to Wu under the garnishments.

### D. Effective date of the Fieri Facias Lien

The Firms' final assignment of error is that the circuit court erred in holding the Code § 8.01-501 lien could attach to the funds in the trust accounts "without regard to service of the notice of lien upon anyone." The circuit court actually ruled in its opinion letter that: "According to Code § 8.01-501, the lien of fieri facias was effective on the date it was delivered to the sheriff, which the parties agree was October 7, 2005." The court then cited the statute, which provides: "Every writ of fieri facias shall . . . be a lien from the time it is delivered to a sheriff . . . on all the personal estate of

19

or to which the judgment debtor is . . . possessed or entitled."

Code § 8.01-501 (emphasis added). The Firms' only argument to

the circuit court was that the lien was not effective as to them

because of the failure to serve the notice of lien under Code

§ 8.01-502. Otherwise, the Firms conceded the effective

attachment of the fieri facias lien before the circuit court.

> [A]lthough the lien became effective – was created I
> guess is a better way to put it, statewide territorial
> lien on intangible property was created when that writ
> of execution was placed in the hands of the Virginia
> Beach sheriff on October 7th, it was not binding upon,
> it was not effective against the two law firms until
> all the procedures set forth in [Code §] 8.01-502 were
> met.

Having failed in their argument under Code § 8.01-502, as

just addressed above, the Firms made no other argument in the

circuit court that related to any notice defect in the

garnishment.[7] Moreover, the Firms' argument that there was no

service of notice of the fieri facias lien is contrary to the

law of this case. As noted previously, the circuit court found

as a fact that the Firms had been served on October 7, 2005, the

same date the fieri facias writ was delivered to the sheriff and

the Firms assigned no error to that finding. Whether failure to

have made service on the Firms upon the day of the delivery of

---

[7] No issue was raised below regarding any other defect in the notice of the lien of fieri facias, such as a claim of lack of due process, or that the Firms had a lien interest of their own under Code § 54.1-3932 or otherwise.

20

the writ to the sheriff would have affected the lien under Code

§ 8.01-501 is not an issue before the court in this case.

Accordingly, as the provisions of Code § 8.01-502 did not

apply to the Firms, the circuit court did not err in finding the

lien of the writ of fieri facias became effective against the

Firms as of October 7, 2005.

CONCLUSION

For the reasons set forth above, we will affirm the

judgment of the circuit court.

Affirmed.