**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1132**

UNITED MARKETING SOLUTIONS, INC.,

        Plaintiff - Appellee,

    v.

ANGIE M. FOWLER; TIMOTHY P. FOWLER,

        Defendants - Appellants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:09-cv-01392-GBL-TCB)

Argued: January 30, 2013       Decided: February 27, 2013

Before NIEMEYER, SHEDD, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Nancy D. Greene, ACKERMAN BROWN, Washington, D.C., for Appellants. Patrick James McDonald, CAMERON MCEVOY, PLLC, Fairfax, Virginia, for Appellee. **ON BRIEF:** John Patrick Sherry, CAMERON MCEVOY, PLLC, Fairfax, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Angie and Timothy Fowler ("the Fowlers") appeal the district court's denial of their Federal Rule of Civil Procedure 60(b) motion seeking relief from a final judgment against them and in favor of United Marketing Solutions, Inc. ("United"). For the reasons set forth below, we affirm the district court's judgment denying relief.

## I.

For several years, the Fowlers operated a United direct mail coupon franchise in Greensboro, North Carolina. Following the Fowlers' termination of their contract with United, United obtained a final judgment in the amount of $106,076.82 against the Fowlers ("the Fowler Judgment") in the Eastern District of Virginia.[1] The Fowlers voluntarily dismissed their appeal of that judgment, and this case presents no issue as to the appropriateness or finality of the original judgment.

Rees Associates, Inc. ("Rees"), is an Iowa corporation that possesses an outstanding judgment, rendered in Iowa state court, against United in the amount of $172,194.94 ("the Rees

---

[1] Federal jurisdiction existed by way of diversity, as United is a Virginia corporation and the Fowlers reside in North Carolina, and the amount in controversy exceeded $75,000. See 28 U.S.C. § 1332.

Judgment"). In the fall of 2011, after United obtained the Fowler Judgment, Rees properly domesticated the Rees Judgment in Fairfax County, Virginia Circuit Court, and initiated garnishment proceedings there naming the Fowlers as garnishees.

After receiving the garnishment summons, the Fowlers and Rees entered into a "Settlement and Release Agreement" ("the Agreement"), which called for the Fowlers to pay Rees "the sum of $ ___ upon execution of this Agreement in full and complete satisfaction of the Garnishment. In return for this payment, Rees will credit the Rees Judgment for [$111,766.92] resulting in full satisfaction of the Fowler Judgment." (J.A. 234.) Rees and the Fowlers signed the Agreement on November 9, 2011, and a few days later the Fowlers paid an unknown sum to Rees with the memo of the check noting "For: Satisfaction in full of [United] judgments against Tim Fowler & Angie Fowler."[2] (J.A. 238.) Rees subsequently filed a notice of partial satisfaction of the Rees Judgment in Iowa state court showing $111,766.92 as credited toward the judgment amount.

When United refused to mark the Fowler Judgment as having been satisfied in light of the Agreement and partial

---

[2] The amount paid has been marked out on the record copies of the Agreement and the check. The amount is not an issue in the case, but the Fowlers aver they paid Rees $10,000, and United does not contest this point. The district court used this $10,000 sum in ruling on the Fowlers' Rule 60(b) motion.

satisfaction of the Rees Judgment, the Fowlers filed the underlying Rule 60(b) motion for relief from final judgment in the district court. They argued that relief was appropriate under subsection (5) or (6) because the Fowler Judgment had been satisfied or discharged, and other equitable considerations favored relief.

The district court denied the motion. From the bench, the court explained that the Fowlers had failed to demonstrate the Fowler Judgment had been satisfied, released, or discharged because the Agreement did not have any legal effect on United's right to enforce that judgment. In addition, the district court held that equitable considerations did not weigh in favor of relief given that United in no way influenced the Fowlers or Rees to enter into the Agreement. Nonetheless, the district court permitted a $10,000 equitable offset be applied to the Fowler Judgment based on the actual amount the Fowlers claimed they had paid Rees under the Agreement.[3]

The Fowlers noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

---

[3] United did not file a cross-appeal as to the $10,000 offset and does not otherwise contest that amount in this appeal.

4

II.

We review the denial of a Rule 60(b) motion for abuse of discretion. MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 277 (4th Cir. 2008). Our review is limited to the propriety of Rule 60(b) relief, and does not extend to the underlying judgment. Id.

III.

The Fowlers contend the district court erred in denying Rule 60(b) relief because such relief was appropriate under either subsection (5) or (6).[4] They assert that the Agreement constituted a satisfaction or discharge of the Fowler Judgment that entitles them to relief under Rule 60(b)(5) because the Fowlers "purchased" a portion of the Rees Judgment and "used this property to satisfy the Fowler Judgment[] by offset." (Opening Br. 9, 14.) As such, they contend it does not matter how much they paid Rees for the offset, or what terms were negotiated between them and Rees. Instead, they claim that all that matters for purposes of reviewing the propriety of Rule

---

[4] The opinion follows the parties' lead in focusing on the requirements specifically required for relief under Rule 60(b)(5) and (6) as opposed to the additional requirements for relief from a judgment under Rule 60. Because we conclude that the Fowlers have not satisfied the former, we need not consider the latter.

5

60(b) relief is that as a result of the Agreement, the Fowlers "owned" a portion of the Rees Judgment that was of greater monetary value than the entirety of the Fowler Judgment. Consequently, they contend the Fowler Judgment has been effectively paid in full and they are entitled to relief under Rule 60(b)(5).

Rule 60(b)(5) authorizes, in relevant part, relief where "the judgment has been satisfied, released[,] or discharged." While the Fowlers are correct that they could lawfully purchase a portion of the Rees Judgment from Rees, the record shows that is not what they did. Looking to the plain language of the Agreement, it is clear that neither Rees nor the Fowlers were negotiating a sale of the Rees Judgment to the Fowlers at a reduced rate. Instead, the Agreement arose solely in the context of a "Settlement and Release" of the garnishment proceedings Rees initiated against the Fowlers with respect to the Fowler Judgment.[5] In order to "settle[] . . . the Garnishment," the Fowlers paid Rees a sum "in full and complete satisfaction of the Garnishment," in return for which Rees

---

[5] Beyond the title of the agreement—which refers to it being a settlement of the garnishment proceeding and release of any claims arising therefrom, the Agreement repeatedly refers to the garnishment proceedings, noting that the Agreement arose out of the parties' "desire to settle[,] resolve[,] and voluntarily compromise . . . all claims or disputes arising out of or related to the garnishment." (J.A. 233.)

agreed to "credit the Rees Judgment for $111,766.92 resulting in full satisfaction of the Fowler Judgment." (J.A. 234.) This language does not reflect a partial sale and purchase of the Rees Judgment, as the Fowlers now contend the transaction in effect was.

Rees and the Fowlers' behavior immediately following entering into the Agreement further supports this conclusion. Rees independently and voluntarily entered a partial notice of satisfaction of the Rees Judgment. The Fowlers, in turn, filed an answer in the garnishment proceedings indicating that the "funds due" to United had been tendered to Rees "pursuant to a settlement agreement with [Rees] related to this garnishment." (J.A. 244.) Even the check the Fowlers wrote to Rees stated that it was in "[s]atisfaction in full of" the Fowler Judgment, as opposed to the purchase of a portion of the Rees Judgment. (J.A. 238.) Simply put, the Agreement was not a contract to sell a portion of the Rees Judgment to the Fowlers. The Fowlers ask the Court to ignore the Agreement's plain terms in favor of an after-the-fact alternate construction that would fix the mistakes of law and fact that they and Rees were operating under at the time of entering into the Agreement. We cannot do so. See Comtois v. Rogers, 715 S.E.2d 1, 4 (Va. 2011) (stating that contracts are to be construed according to their "plain meaning" where the terms are "clear and unambiguous").

7

Moreover, the Agreement did not satisfy or discharge the Fowler Judgment even though Rees and the Fowlers stated that it should have that effect. The Fowlers and Rees appear to have entered into the Agreement fundamentally misunderstanding the nature of garnishment proceedings in Virginia, as well as each entity's rights and responsibilities in such a proceeding. At bottom, the garnishment did not permit Rees and the Fowlers to contract around United's right to enforce the Fowler Judgment, a judgment owned and controlled solely by United. In Marcus, Santoro & Kozak, P.C. v. Wu, 652 S.E.2d 777 (2007), the Supreme Court of Virginia ably described garnishment proceedings in the Commonwealth:

> Garnishment is the process by which a judgment creditor may enforce the lien of his writ of fieri facias against any debt or property due his judgment debtor that is held by a third party, the garnishee. The creditor can assert no greater rights against the garnishee than the judgment debtor, himself, possesses.

Id. at 782 (internal citation omitted). "The summons issued in a garnishment proceeding 'warns' the garnishee not to pay the judgment debtor's money to the judgment debtor, with the sanction that if the garnishee were to do so, it would become personally liable for the amount paid." Id. at 783 (quotation marks omitted). "[T]he judgment creditor does not 'step into the shoes' of the judgment debtor and become a party to the contract, but merely has the right to hold the garnishee liable

8

for the value of that contract right.'" Network Solutions, Inc. v. Umbro Int'l, Inc., 529 S.E. 2d 80, 88 (Va. 2000) (quoting United States v. Harkins Builders, Inc., 45 F.3d 830, 833 (4th Cir. 1995)).

The Fowlers had several options upon receiving the garnishment summons. See Harkins Builders, 45 F.3d at 833 ("The garnishee is required to respond to the garnishment summons by confessing the amount owed to the judgment debtor or by denying it has any property of the judgment debtor. It may also pay such monies into court as it confesses.") (internal citation omitted); see also Va. Code. Ann. § 8.01-512.3. Rees' garnishment merely allowed Rees to hold the Fowlers "liable for the value of" the Fowler Judgment; i.e., it was effectively an attachment of assets. See Harkins Builders, 45 F.3d at 833. The garnishment did not cause Rees to "become a party to the contract" such that Rees could negotiate on behalf of either United or the Fowlers with respect to settling, discharging, or otherwise altering the Fowler Judgment itself. See id. The Fowlers and Rees could not, under the guise of settling the garnishment, enter into separate negotiations and agree to the direct payment of money from the Fowlers (the garnishee) to Rees (the judgment creditor) as "payment" of the Fowler Judgment owned by United. The Agreement thus had no legal effect on United's ability to enforce the Fowler Judgment. Consequently,

9

the district court did not abuse its discretion in denying relief pursuant to Rule 60(b)(5).

The Fowlers also assert that they are entitled to relief under Rule 60(b)(6), which permits relief from judgment on "any other reason that justifies relief." This is so, they maintain, because failing to enforce the Agreement against United in the manner the Fowlers and Rees intended causes United to be unjustly enriched. Put another way, the Fowlers contend that because United received the "benefit" of partial satisfaction of the Rees Judgment, it would be inequitable for them to also retain the "benefit" of enforcing the Fowler Judgment. As such, they submit the district court abused its discretion in denying relief under Rule 60(b)(6).

We disagree. Although Rule 60(b)(6) is a "catchall" provision, it has limited applicability. "While [subsection (6)] includes few textual limitations, its context requires that it may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5)." Aikens v. Ingram, 652 F.3d 496, 500 (4th Cir. 2011) (en banc). This is so because "giv[ing] Rule 60(b)(6) broad application would undermine numerous other rules that favor the finality of judgments." Id. at 501.

10

In considering whether the district court abused its discretion in denying relief under Rule 60(b)(6), we look to whether relief is appropriate "to accomplish justice" as between the Fowlers and United. Cf. Klapprott v. United States, 335 U.S. 601, 615 (1949). Neither the Rees Judgment nor the Agreement altered the relationship between the Fowlers and United in any way. Under the terms of the Agreement, the Fowlers gave Rees $10,000, and in exchange Rees gave United a benefit with respect to the Rees Judgment. But that transaction did not change anything with respect to the relative positions of the Fowlers and United; more importantly, and as discussed above, the Agreement in no way altered United's right to enforce the Fowler Judgment. That is as true in equity as it is in law. To hold otherwise would permit a judgment debtor and third party to contract around a judgment creditor's right to enforce its judgment without the judgment creditor's participation or consent. The district court did not abuse its discretion in concluding that this scenario did not constitute an "extraordinary circumstance" allowing for relief under Rule 60(b)(6).[6]

---

[6] The Fowler also challenge an alternative rationale the district court provided regarding the priority of an attorney's lien over the Agreement. In light of our conclusion that the district court did not abuse its discretion on its primary ratio decidendi, we need not address that argument.

11

IV.

For the aforementioned reasons, we affirm the district court's judgment.

AFFIRMED